MARION F. EDWARDS, Chief Judge.
| ?Defendant/appellant, Brian Chappell (“Chappell”), appeals his conviction and sentence of attempted receiving stolen property; namely, a 2008 Fontaine lowboy trailer.
Chappell was originally charged with one count of receiving stolen property valued at more than $500 in violation of La. R.S. 14:69, and with one count of theft by fraud in violation of La. R.S. 14:67. He entered a plea of not guilty on each charge. After a trial, the jury returned a responsive verdict of attempted receiving of stolen property as to Count 1, and a verdict of not guilty as to Count 2, theft by fraud. Chappell was sentenced to one year in the Department of Corrections, and he was ordered to pay restitution in the amount of $28,488.32. Chappell appeals the conviction and sentence.

FACTS

In 2003, Southland Idealease (“South-land”), located in Gary, Louisiana, purchased a Fontaine lowboy trailer used for hauling heavy equipment. Shortly afterward, Southland entered into a three-year lease on the trailer with Leroy Williamson in Gonzales, Louisiana. On April 15, 2004, the trailer was stolen from |sMr. Williamson’s property. Mr. Williamson notified police, who made a report of the theft.
The trailer was not located until February 2006, when Louisiana State Trooper Joseph Cuccia of the Insurance Fraud Auto Theft Unit received a call informing him that a trailer without a VIN plate was found at the St. Bernard landfill. Trooper Cuccia went to the site and found a Fon-taine lowboy trailer which, after investigation, was discovered to be the same trailer stolen from Mr. Williamson’s property in 2004.
When Trooper Cuccia got to the scene he spoke with Chappell. Chappell told the Trooper that the trailer was stolen from the yard of his company, Brian’s Towing. Chappell explained that he was driving along 1-310 a few days earlier when he spotted the trailer on the highway. He called state police. However, they were unable to investigate because it was the day before Mardi Gras. Chappell followed the trailer to the St. Bernard Landfill and called St. Bernard authorities, who im *219 pounded the vehicle until a state trooper could investigate. Chappell also told Trooper Cuccia the trailer had no VIN plate.
Believing that Chappell was telling the truth, Trooper Cuccia allowed Chappell to tow the trailer back to his business in Laplace, Louisiana.
Later in the investigation, Trooper Cuc-eia visited with Chappell, who stated that he had towed the trailer from St. Rose Travel Center in St. Rose, Louisiana, to Brian’s Towing in Laplace. He was told by a representative of the St. Rose Travel Center that the trailer had been abandoned. The trailer was stolen from Brian’s Towing in Laplace, Louisiana. Chap-pell gave the Trooper a form generated by Brian’s Towing to show that, on March 20, 2005, he towed a lowboy black trailer from the St. Rose Travel Center located at 1045 Airline Highway in St. Rose at the request of Shanda Richards.
|4The driver of the trailer told St. Bernard Parish Police officers that the trailer belonged to Steven Ford, owner of Thibo-daux Lumber. As part of his investigation, Trooper Cuccia went to talk to Steven Ford. Ford stated that he intended to purchase the trailer from Kenneth Alexander. Ford showed the trooper three checks made out to Kenneth Alexander for the purchase of the trailer. The first was dated January 29, 2005 for $3,500; the second was dated February 29, 2005 for $3,500; and the final check in the amount of $1,000 was dated March 11, 2005. All three checks had cleared the bank and were entered as exhibits in the record before us. However, when Alexander did not produce the title, registration, or any other paperwork, Ford stopped making payments on the trailer.
Because of the conflicting dates and questions as to where the trailer was actually located on March 20, 2005, Trooper Cuccia went to St. Rose Travel Center to confirm Chappell’s story. The trooper discovered Chappell’s assertion that he towed the trailer from St. Rose was not truthful. Further, Chappell did not file an official report of a stored vehicle when he towed the trailer as required by law.
On cross-examination, Trooper Cuccia testified that the trailer had a “switched” license plate, but he could not be positive from where the plate originated. No action was taken against the driver of the trailer or Steven Ford. However, Kenneth Alexander was subsequently arrested. Trooper Cuccia also testified that, although Ford claimed to own the trailer after the purchase from Alexander, no in-dicia of his ownership, such as a title, registration, or brake tag, was discovered. According to official records, Southland was the true owner of the trailer.
Jodie Teuton, a part owner and the attorney for Southland, testified that the trailer in question was owned by South-land. Ms. Teuton offered the title as proof |sof that fact. When the trailer was stolen, Southland received an insurance settlement of $10,000. After the trailer was recovered, Southland sold it to Steven Ford for $34,500. Ms. Teuton stated that Southland actually made a profit on the trailer.
Connie Chappell, Chappell’s ex-wife, also testified at trial. She testified that, during the time frame of the incidents relevant to this matter, she was still married to Chappell, and she was also working ■with him at Brian’s Towing. Ms. Chappell was the office manager. In that capacity, she answered the phones, dispatched the drivers, did paperwork on the vehicles, and did the timekeeping and payroll. Ms. Chappell explained that the normal procedure when a vehicle was towed into storage was to write a tow ticket that included *220 the year, make, model, color, and VIN number. All that information would then be reported on an “Official Report of a Stored Vehicle” (“ORSV”) form to Baton Rouge. According to law, that form must be filed within three days of the towing. After the form was processed in Baton Rouge, the towing company would be informed of the titled owner. Ms. Chappell testified that either she, or Chappell’s son, would complete the form. However, Ms. Chappell also testified that she did not prepare a form on the trailer at issue herein.
Ms. Chappell’s testimony is that, when she got to the towing yard, the trailer was there. She asked Chappell from where it came, and he said he purchased it from Kenneth Alexander. He never mentioned St. Rose Travel Center until much later after the incident in the St. Bernard landfill. When the trailer was towed back to Brian’s towing, Chappell instructed his wife to complete and file an ORSV form.
Patricia Farlough, the director of store operations for St. Rose Travel Center, also testified at trial. She stated that St. Rose always uses Clement’s Towing ^Service. She has never heard of Brian’s Towing, and she further testified no one named Shanda Richards has ever been employed with St. Rose. Her exact testimony regarding the document given to Trooper Cuccia by Chappell representing a towing ticket for the trailer from St. Rose was that it is “totally bogus.”
Chappell testified at trial. He stated that he maintains a storage facility at his place of business, Brian’s Towing. Chap-pell denied knowing Kenneth Alexander or taking any money from him.
Chappell also testified that, in March of 2005, his former wife, Connie Chappell, called him to say that she was dispatching a truck to Riverbend Truck Stop to pick up several abandoned vehicles. One of those vehicles was the trailer. That was the first time he saw the trailer. He explained that Riverbend Truck Stop is directly across the street from the St. Rose Travel Center, and the manager at the time was Shanda Richards. Chappell testified that he occasionally did work for St. Rose and had once towed two expensive boats for St. Rose.
Chappell stated that, in February of 2006, he and his wife were riding in a tow truck when they spotted the trailer on the highway. Chappell called the State Police several times from his cell phone. However, it was the day before Mardi Gras, and there were no officers available to assist him that day. Consequently, Chappell followed the trailer to St. Bernard Parish and notified officials there. The trailer was impounded until the State Police could conduct the investigation.
On cross-examination, Chappell admitted he told Trooper Cuccia that he towed the trailer from St. Rose, but he misspoke; it was actually from Riverbend. Chappell also testified that he called Trooper Cuccia about a week later to correct the mistake.
[7Chappell further testified that he has a prior conviction for receiving stolen property and was arrested for stalking his ex-wife.

LAW AND ANALYSIS

Chappell assigns three errors for our review in this appeal. He asserts that trial counsel was ineffective for failing to object to testimony and argument regarding Chappell’s prior arrests; the evidence is insufficient to uphold the conviction; and the restitution ordered is excessive and/or illegal.
Chappell argues the State failed to prove that he was guilty of attempted illegal receiving of stolen things worth more *221 than $500.[1] Chappell contends that the only evidence that implicates him is (1) the testimony of Mr. Ford; (2) the testimony of Ms. Chappell; and (8) 'Chappell’s own insistence that he towed the trailer from St. Rose Travel Center as opposed to the Riverbend Truck Stop. Chappell contends that the testimony .of Mr. Ford and Ms. Chappell lacks credibility, as neither of them could “keep their stories straight.” Furthermore, Chappell argues that his insistence that he towed the trailer from St. Rose Travel Center was merely a mistake, which he finally realized and tried to correct.
Chappell also makes the argument that had he not called the police, Southland would not have recovered the trailer, and Mr. Ford would likely still be in possession of the trailer “failing to pay anyone for using it, with no valid title, no bill of sale, no brake tag, an illegal license plate and no insurance.” Chappell concludes that the State did not meet its burden in this case; thus, the conviction should be set aside.
|sThe constitutional standard for testing the sufficiency of the evidence is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt.[3] Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts.[4] The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.[5] The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.[6]
Chappell was charged with illegal possession of a stolen thing valued over $500, a violation of La. R.S. 14:69. In order to obtain a conviction for this offense, the State must prove beyond a reasonable doubt that defendant 1) intentionally possessed, procured, received or concealed, 2) anything of value, 3) which had been the subject of any robbery or *222 theft, 4) where the circumstances indicate that the offender knew or had good reason to believe that the thing was the subject of these offenses, and that 5) the value of the item stolen exceeded $500.[7]
|9The jury found Chappell guilty of the responsive verdict of attempted illegal possession of a stolen thing valued over $500. An attempt occurs when the offender, having the specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object.[8]
Specific criminal intent exists “when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.”[9] Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant.[10]
In his arguments to this Court, Chappell is attacking the credibility of the witnesses and attempting to bolster his own trial testimony. This Court has stated that the credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact.[11] The trier of fact shall evaluate the witnesses’ credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law.[12]
The jury chose to believe the testimony of the State’s witnesses instead of that of Chappell. Based on the foregoing testimony, the elements of the crime of possession of a stolen thing valued over $500 were established at trial. Additionally, the elements of the responsive verdict of attempted possession of a stolen thing valued over $500 were established at trial. Under these circumstances, there was adequate evidence under the Jackson standard to establish that the | inChappell knowingly and intentionally possessed the stolen trailer. This assignment is without merit.

INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Chappell argues that his defense counsel failed to object during cross-examination when the State questioned Chappell regarding his twenty-two previous arrests. Chappell further contends that defense counsel failed to object during the State’s closing argument and rebuttal when the prosecutor again referred to Chappell’s twenty-two arrests and argued that he was “previously found guilty for this same exact crime but expected the jury not to believe he was guilty of this one.” Chap-pell contends that “this inadmissible evidence and testimony had the ultimate result of causing the jury to convict.” Thus, Chappell argues that he should be entitled to a new trial.
*223 A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § IB of the Louisiana Constitution of 1974. In order to show ineffective assistance of counsel, defendant must demonstrate that 1) his attorney’s performance was deficient, and 2) he was prejudiced by the deficiency.[13] An error is prejudicial if it was so serious as to deprive defendant of a fair trial, or “a trial whose result is reliable.”[14] In order to show prejudice, defendant must demonstrate that, but for counsel’s unprofessional conduct, the outcome of the trial would have been different.[15]
A claim for ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief, filed in the trial court where a full evidentiary hearing can be conducted, rather than direct appeal.[16] When the rec-ord_|_y contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy.[17] Where the record does not contain sufficient evidence to fully explore a claim of ineffective assistance of counsel, the claim should be relegated to post-conviction proceedings under La. C.Cr.P. arts. 924-930.8.[18]
In the present case, we find the record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal. Accordingly, we will consider the issue on appeal.
First, Chappell argues that his counsel was ineffective for failing to object when the State questioned him during cross-examination regarding his twenty-two arrests.[19]
At trial, defendant testified in his own defense. On direct-examination, defense counsel asked, “Mr. Chappell, have you been, have you been arrested before?” Then, the following exchange occurred:
Defendant: Yes, sir.
Defense counsel: Have you ever plead [sic] guilty before?
Defendant: No, sir. One, one time I did.
Defense counsel: Okay. Can you tell us what that charge was?
Defendant: I bought a pick-up truck ... and I got charged for possession of stolen property.
Defense counsel: And how long ago was that?
Defendant: I was in high school. I don’t remember. Like '85, '84, something like that.
Defense counsel: If [sic] the record show that it was — Let me get back to it, please. The record show [sic] it was 1982.
Defendant: That’s probably about—
Defense counsel: Okay.
*224 Defendant: I don’t remember what, exactly what year.
Defense counsel: All right. Have you been arrested on any other charges?
112Pefendant: Yeah. I was charged for contributing to delinquency when I was younger.
Defense counsel: Were all these in the eighties?
Defendant: Yes, sir.
On cross-examination, the prosecutor asked Chappell, “Mr. Garrity, in his examination of you, asked you if you had ever been arrested before and, and you gave a couple of occasions, but you’ve been arrested twenty-two times, right? Then, the following exchange occurred:
Defendant: Several times, sir, yes.
Prosecutor: Twenty-two times, would that, does that, that’s—
Defendant: I wouldn’t know the exact numbers.
Prosecutor: Okay.
Defendant: I know I was into trouble when I was younger.
Prosecutor: Well, let’s go, back in 1981 you were arrested in New Orleans for illegal weapons charge, you were arrested. You remember that?
Defendant: Yes, sir.
Prosecutor: Okay. Now, that was, how old were you then?
Defendant: I don’t remember.
Prosecutor: Well.
Defendant: I know I was a teenager.
Prosecutor: Let’s see, you, you were born in '64 and this took place in '81. So that would make you approximately seventeen years old? That’s high school?
Defendant: Yes, sir.
Prosecutor: Then in 1982 you were arrested for, in St. Charles Parish, for contributing to the delinquency of juveniles. Is that correct?
Defendant: Yes, sir. I’m pretty sure.
Prosecutor: All right. Then again in '82, in St. Charles Parish, for illegal possession of stolen things. That’s the thing you were talking about before, when you were talking about how you were young and still in high school and somebody said you did something?
Defendant: Yeah, approximately that.
Prosecutor: Then in '83 you were arrested.for, I guess, driving a motorcycle without a helmet?
Defendant: Yeah, I believe so.
Prosecutor: Then in 1985 — Now, we’re up to where you’re like twenty-one years old in '85, huh?
Defendant: Yeah.
Prosecutor: Okay.
Defendant: Approximately.
| iSProsecutor: In Hahnville you are again arrested for possession, receiving stolen things, right? And you plead [sic] guilty to that, right?
Defendant: Yes, sir, yes.
Prosecutor: You took a felony conviction for receiving stolen things, the same thing you’re on trial for right now, right?
Defendant: Yes, sir.
Prosecutor: Okay. And you served probation on that, right?
Defendant: Yes, I believe so.
Prosecutor: With, with DOC. You had active probation, had a probation officer?
Defendant: No, I didn’t have any of that.
Prosecutor: You didn’t have a probation officer. Okay. Then in '88 you got arrested for simple burglary, right? And another charge, in, in St. Charles Parish, of illegal possession of stolen *225 things. You got arrested for the third time for receiving stolen things in St. Charles Parish in '88, right?
Defendant: I know there was a couple of times I did, yes, sir.
Prosecutor: There was a couple of times, yeah. 1990, St. Charles Parish, simple battery. You got arrested for battery?
Defendant: I got in a fight.
Prosecutor: Got in a fight. 1992, aggravated battery. Another fight?
Defendant: Yes.
Prosecutor: That time it involved a—
Defendant: Well, somebody, somebody had jumped me.
Prosecutor: Yeah. But you, but you had a weapon that time, huh?
Defendant: No.
Prosecutor: No? Aggravated battery, that doesn’t involve a weapon?
Defendant: I don’t know what it involves. I didn’t have a weapon, never have.
Prosecutor: 1994, theft of five hundred dollars or more in St. John Parish. You remember that arrest?
Defendant: I think that’s for this, isn’t it?
Prosecutor: 1994?
Defendant: Oh, '94, I thought you said '04. I don’t recall that.
Prosecutor: 1995, St. John the Baptist Parish, aggravated battery. Another fight?
Defendant: I don’t know how many times they had on there. I only got in a fight a couple times that I remember.
Prosecutor: No, the first battery, the first one was in Hahnville, in St. Charles Parish, these second two, '92 and '95, aggravated batteries in St. John Parish.
Defendant: I don’t know.
114Prosecutor: I mean, I know there’s a lot, I mean—
Defendant: Yeah, I don’t—
Prosecutor: —you, you, you can’t remember all of them. I, I, I, I [sic] can appreciate that. 1997, disturbing the peace cursing. You remember that?
Defendant: No, sir.
Prosecutor: You don’t remember. 2008, criminal mischief. 2003, St. John Parish, giving a false fire alarm and felony theft. Do you remember that arrest?
Defense counsel then objected, stating that this information was not included in the discovery he was provided. The court took a five-minute recess. Outside the presence of the jury, it was determined that defense counsel had been provided the information, but in a different format. The prosecutor then resumed cross-examination. The following exchange occurred:
Prosecutor: —in '07 in Ascension Parish. Do you remember getting arrested in '07 for stalking, remaining on places, on land after being forbidden? Do you recall that arrest?
Defendant: Yeah, that’s for my wife.
Prosecutor: That was, that involved your wife, your ex-wife?
Defendant: Ex-wife, yes.
Prosecutor: Okay. And you do have the one prior conviction in St. Charles Parish .... for a [sic] receiving stolen things back when you were twenty-one years old, right?
Defendant: I believe so.
Every testifying witness in a criminal case, including the defendant, subjects himself to limited examination relative to his criminal convictions.[20] Generally, evidence of arrests for which there has not *226 been a conviction is not admissible upon the issue of credibility.[21] However, when a defendant testifies on direct examination, the State is not precluded from contradicting defendant’s testimony upon an issue that defendant himself has brought into the case.[22] When a defendant has “opened up” the issue of his arrest record, evidence pertaining to such arrest is 1T ¡-.clearly admissible.[23] It is well recognized that when one side has partially gone into a matter during its direct examination, the other side may fully go into it on cross-examination.[24] Any doubt as to the propriety or extent of cross-examination is resolved in favor of the cross-examination.[25]
La.C.Cr.P. art. 770 provides that a mistrial shall be ordered when the district attorney makes a remark or comment within the hearing of the jury referring directly or indirectly to “[a]nother crime committed or alleged to have been committed by the defendant as to which evidence is not admissible[.]” The introduction of inadmissible other crimes evidence is subject to a harmless error analysis.[26]
The issue in the present case is whether defense counsel’s inquiry into Chappell’s past arrests “opened the door” to his arrest record. We find that it did. Chappell testified that he had been convicted of possession of stolen property and that he had been arrested for stalking his ex-wife. That testimony opened the door for cross-examination on his criminal record. The State is allowed to contradict the defendant’s testimony given on direct examination upon an issue which the defendant himself has brought into the case.[27] It is well recognized that when one side has partially gone into a matter during its direct examination, the other side may fully go into it on cross-examination.[28] Any doubt as to the propriety or extent of cross-examination is resolved in favor of the cross-examination.[29]
Because the State’s questions regarding Chappell’s past criminal record were proper, defense counsel did not err in failing to object to the line of | ^questioning. Therefore, defense counsel’s performance was not deficient under the first prong of Strickland.
Second, Chappell argues that his trial counsel was ineffective for failing to object to the portion of the prosecutor’s closing argument and rebuttal regarding defendant’s twenty-two arrests and prior conviction for possession of stolen property.
La.C.Cr.P. art. 774 defines the scope of argument and rebuttal as follows:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
*227 The state’s rebuttal shall be confined to answering the argument of the defendant.
The trial judge has broad discretion in controlling the scope of closing arguments.[30] A conviction will not be reversed due to improper remarks during closing argument unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict.[31] Furthermore, a prosecutor retains “considerable latitude” when making closing arguments.[32] In making its determination, the appellate court should give credit to the good sense and fair-mindedness of the jury that has seen the evidence and heard the argument, and has been instructed that the arguments of counsel are not evidence.[33]
Chappell further argues that trial counsel was ineffective for failing to object during the prosecutor’s rebuttal in which the previous crimes were mentioned.
In his rebuttal, the prosecutor stated:
117And, and it comes down, ladies and gentlemen, to if you’re going to believe the word of somebody who has been convicted of this same offense once before and has been arrested twenty-three [34] times. Counsel says they didn’t object to it. I think he objected to it. But, you know, he’s got a history here. If you want to believe, based on what he says, that, “Oh, I’m some kind of good Samaritan, you know, I was just going out there to pick up this trailer for Southland Idealease, you know, I was, I was just doing a good deed....
The prosecutor further stated:
I tell you what smells about this case. What smells about this case is a guy getting on that stand and expecting you to acquit him, to find him not guilty. A guy who has been found guilty of this very same crime on a previous occasion wants you to believe him and say, oh, a guy that’s been arrested twenty-three times, some of which for the same crime, oh, just believe me, you know, I didn’t know, I’ve been taken, I’ve been taken for a ride. No, he was taking people for a ride.
La.C.Cr.P. art. 774 provides that the State’s rebuttal shall be confined to answering the argument of defendant. Therefore, it is necessary to consider defense counsel’s closing argument in determining whether he erred in failing to object to the State’s rebuttal closing argument.
In his closing argument, defense counsel stated:
And, and think about this. Why is the trailer where it is today? Because of [Chappell]. [Chappell’s] the one who tracked [sic] down. [Chappell] is the one who called the police. And now he’s being prosecuted for it because he towed it from, [sic] under the direction of the State Police? I, I don’t know what [defendant] did to get himself in this jam. *228 I know he was arrested twenty-three[35] times. You all have looked at the records. Most of it [sic] when he was younger except after the situation with his wife. He did plead guilty once. Every other charge against him was dismissed. Every single other one. And, folks, look, I got expelled from college and I had my problems and I, and fortunately it was a long time ago and most everybody has forgotten. That’s something that I hope, we brought it up and some things, a lot of people won’t, a lot of lawyers won’t put their client on the stand for that reason, they don’t want that brought out. We’re not hiding anything. We’re not hiding his past record. We’re not hiding what he did in the past. The issue is this today, what did he do today. And our position is he did nothing but give that lady back her trailer so she could sell it to the guy that stole it.
| „We find the prosecutor’s remarks about Chappell’s prior conviction in rebuttal were in response to defense counsel’s closing argument. Accordingly, we find trial counsel was not deficient in failing to object during the prosecutor’s rebuttal given this Court’s finding that the prosecutor’s remarks were proper.
This assignment is without merit.

RESTITUTION

In his final argument, Chappell asserts the restitution ordered by the trial judge was excessive and exceeded the amount of actual pecuniary damage allowed by La. C.Cr.P. art. 895.1.[36] Moreover, at trial, the victim admitted to profiting from the theft of the trailer. Thus, Chappell contends that the portion of his sentence ordering restitution should be set aside.
In the present case, Chappell did not file a motion to reconsider sentence. This Court has held that the failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a bare review of the sentence for constitutional excessiveness.[37] Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense or shocking to the sense of justice.[38] Accordingly, we will address whether the amount of restitution ordered was unconstitutionally excessive or illegal.
Courts have wide discretion regarding the imposition of restitution when it is reasonably related to defendant’s rehabilitation.[39] In ordering restitution, the trial judge has discretion and his discretion will not be disturbed absent an abuse of this | ^discretion.[40] In reviewing excessive sentence assignments, the sentence imposed will not be set aside absent a showing of manifest abuse of the trial court’s wide discretion.[41]
In ordering Chappell to pay restitution, the trial judge referred to the pre-investi-gation report. The court ordered Chap- *229 pell to pay a total of $28,488.32 in restitution for the following pecuniary losses: (1) Loss of a flip axle valued at $6,034; (2) $2,164 charged by Brian Towing for towing the trailer from St. Bernard to Laplace; (3) $1,400 for missing tires; and (4) loss of rental income of $18,850.
Chappell argues the loss of rental income is speculative, the axle and tires were missing when he found the trailer in St. Bernard, and the towing charge he billed Southland was the basis of the fraud charge of which he was found not guilty. Chappell also argues the restitution is excessive because Southland admitted at trial that it made money on the sale of the trailer and the insurance proceeds received at the time of the theft.
The loss of rental income was proven at trial with the testimony of Ms. Teuton who stated that, at the time the trailer was stolen, it was leased for three years to Leroy Williamson. Although the record does not indicate the amount of lost rentals, the trial court decided on the amount of loss after a review of the pre-sentencing report and recommendation. That amount of restitution is affirmed.
There is no evidence in the record, either testimonial or documentary, to support the $6,034 for a flip axle. Therefore, that element of restitution is reversed.
| ¡^Regarding the $1,440 for tires, we find the record supports this item of restitution. Ms. Teuton testified that the trailer was missing wheels and tires when the trailer was retrieved from Brian’s Towing. The record contains an invoice from Brian’s Towing to Southland for towing the trailer from the St. Bernard Landfill to Brian’s Towing for a total of $1,909.94. That bill represents a $562.50 towing fee; a $41.19 fuel charge; a $1,000 storage fee; and a fee of $25 for filing the ORSV with the State as required by law. A note on the bottom shows that Joe Teuton authorized the replacement of six wheels removed and replaced; there is no indication that the work was done. Therefore, we find no abuse of the trial court’s decision to order this element of the restitution.
In his final argument regarding the restitution, Chappell argues the total amount charged to Southland of $2,164.32 for towing, fuel, and storage should be reversed because this element of damages was the basis of the fraud charge against him. Chappell argues that, since he was acquitted of that charge, he should not have to pay restitution. We agree. We find the trial court erred in ordering restitution for a charge tried by the jury that ended in a verdict of not guilty.

ERRORS PATENT

The record was reviewed for errors patent.[42] We find there is an inconsistency between the transcript and the commitment. Although the transcript reflects that Chappell was properly advised of the prescriptive period for filing post-conviction relief, the commitment reflects an incomplete advisal. The transcript reflects that the trial court advised Chappell that he had “two years after [his] sentence and conviction become final to file an application for post-conviction relief.” However, the commitment states “defendant has two years to file post-conviction relief after judgment of conviction becomes final.” La.C.Cr.P. I^art. 930.8 provides that a defendant has two years from the date the *230 defendant’s conviction and sentence become final in which to apply for post-conviction relief, (emphasis added).
Where there is a conflict between the transcript and the minute entry, the transcript prevails.[43] Therefore, we order the trial court to amend the commitment to conform with the transcript.[44] We further order that the clerk of court of the district court transmit the original of the amended commitment to the officer in charge of the institution in which Chappell is incarcerated.[45]
For the reasons set forth in this opinion, Chappell’s conviction is affirmed. The sentence is amended to exclude the $2,164.32 billed by Brian’s Towing, and the $6,034 for a flip axle from the restitution. In all other respects we affirm the sentence. The matter is remanded with orders.

CONVICTION AFFIRMED; SENTENCE AMENDED AND, AS AMENDED, AFFIRMED; MATTER REMANDED WITH ORDERS

.Chappell’s assignments of error are addressed out of order so the sufficiency of the evidence is addressed first in accordance with State v. Hearold, 603 So.2d 731, 734 (La.1992). In Hearold, the Louisiana Supreme Court stated that, when the issues on appeal relate to both sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The rationale is that when the entirety of the evidence, including evidence erroneously admitted, is insufficient to support the defendant's conviction, the defendant must be discharged as to that crime, and any issues regarding trial errors become moot. See, Hearold, supra.

. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

. State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019.

. State v. Kempton, 01-572 (La.App. 5 Cir. 12/12/01), 806 So.2d 718, 722.

. La. R.S. 15:438.

. State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83 (quotation omitted).

. State v. Brooks, 01-1073 (La.App. 5 Cir. 2/26102), 811 So.2d 1066, 1069.

. La. R.S. 14:27; State v. Robinson, 07-832 (La.App. 5 Cir. 4/15/08), 984 So.2d 856, 867, writ denied, 08-1086 (La. 12/19/08), 996 So.2d 1132 (quotation omitted).

. La. R.S. 14:10(1).

. State v. Chattman, 01-556 (La.App. 5 Cir. 10/30/01), 800 So.2d 1043, 1048, writ denied, 01-3320 (La.12/19/02), 833 So.2d 332.

. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.

. Id.

. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064.

. Strickland, 466 U.S. at 693, 104 S.Ct. at 2068.

. State v. McIntyre, 97-876 (La.App. 5 Cir. 1/27/98), 708 So.2d 1071, 1075, writ denied, 98-1032 (La.9/18/98), 724 So.2d 753.

. Id.

. State v. Rose, 97-943 (La.App. 5 Cir. 1/27/98), 708 So.2d 1093, 1095, writ denied, 98-0673 (La.8/28/98), 723 So.2d 416.

. La.C.Cr.P. art. 841 provides that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence.

. La. C.E. art. 609.1(A).

. La. C.E. art. 609.1(B); State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 99.

. State v. Gay, 24452 (La.App. 2 Cir. 3/31/93), 616 So.2d 1290, 1296, writ denied, 624 So.2d 1223 (La.1993) (citing State v. Constantine, 364 So.2d 1011 (La.1978)).

. Id. (citing State v. Cotten, 438 So.2d 1156, 1163 (La.App. 1 Cir. 1983), writ denied, 444 So.2d 606 (La.1984)).

. State v. Edwards, 420 So.2d 663, 675 (La.1982).

. Id.

. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 102.

. State v. Constantine, 364 So.2d 1011 (La.1978).

. State v. Edwards, 420 So.2d 663, 675 (La.1982).

. Id.

. State v. Taylor, 07-93 (La.App. 5 Cir. 11/27/07), 973 So.2d 83, 103, writ denied, 07-2454 (La.5/9/08), 980 So.2d 688.

. State v. Jackson, 04-293 (La.App. 5 Cir. 7/27/04), 880 So.2d 69, 73, writ denied, 05-0232 (La.5/6/05), 901 So.2d 1094.

. State v. Fernandez, 03-987 (La.App. 5 Cir. 12/30/03), 864 So.2d 764, 768.

. Jackson, 04-293 at 6, 880 So.2d at 73. It is noted that the trial judge in the present case instructed the jury that the opening statements and closing arguments of the attorneys were not to be considered as evidence.

. The prosecutor appears to have misstated the number of Chappell's arrests.

. Defense counsel appears to have misstated the number of Chappell’s arrests.

. This statute is inapplicable to the present case because Chappell was not placed on probation.

. La.C.Cr.P. art. 881.1(E) provides, in pertinent part, "Failure to make or file a motion to reconsider sentence ... shall preclude ... the defendant from raising an objection to the sentence ... on appeal or review.”

. State v. McDonald, 33,356 (La.App. 2 Cir. 6/21/00), 766 So.2d 591, 593 (citing State v. Lobato, 603 So.2d 739 (La.1992)).

. State v. Blanchard, 03-0612 (La.App. 5 Cir. 11/12/03), 861 So.2d 657, 667 (citing State v. Alleman, 439 So.2d 418 (La.1983)).

. Id.

. Id.

. See, La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).

. State v. Lynch, 441 So.2d 732, 734 (La.1983).

. See, State v. Jefferson, 03-820 (La.App. 5 Cir. 1/27/04), 866 So.2d 931, 943-44, writ denied, 04-0727 (La.9/24/04), 882 So.2d 1166.

.See, La.C.Cr.P. art. 892 B(2); State ex rel. Stark v. State, 06-1457 (La.2/16/07), 949 So.2d 409, 409-10.