JUDE G. GRAVOIS, Judge.
| ^Defendant, Torrey D. Brown, has appealed his convictions of two counts of battery upon a police officer while being detained in a correctional facility, in violation of La. R.S. 14:34.2(B). For the reasons that follow, we affirm defendant’s convictions and sentences.

PROCEDURAL HISTORY

On May 19, 2009, the Jefferson Parish District Attorney filed a bill of information charging defendant, Torrey D. Brown, with two counts of “battery upon a police officer while being detained in any jail, prison, correctional facility, juvenile institution, temporary holding center, half-way house, or detention facility,” in violation of La. 14:34.2(B). At his arraignment on May 20, 2009, defendant pled not guilty to these charges. On April 13, 2012, defendant filed a pro se motion to quash for failure to provide a speedy trial, which was denied after a hearing held on May 21, 2012. At the same hearing, defendant also made a pro se oral motion for a change of venue, which was also denied.
|4On September 12, 2012, defendant proceeded to a jury trial and was found guilty as charged as to both counts. On September 21, 2012, defendant filed a motion for a new trial and a motion for acquittal notwithstanding the verdict, which were both denied on September 26, 2012. After waiving sentencing delays, defendant was immediately sentenced to two years and six months imprisonment at hard labor on each count, to be served concurrently with each other and consecutively with any other sentence defendant was serving at the time, with credit for time served. After sentencing, defendant made an oral notice of his intent to file a motion for appeal. Defendant filed a written motion for appeal, which was filed and granted on the same date as the sentencing hearing. Defendant also filed a motion to reconsider sentence, which was filed and denied on the same date as the sentencing hearing. On October 17, 2012, the State filed a habitual offender bill of information against defendant, alleging him to be a third felony offender. A habitual offender bill hearing was held on March 21, 2013, at *210 the conclusion of which defendant was adjudicated a third felony offender. The trial court then vacated defendant’s original sentence as to count one and sentenced defendant under La. R.S. 15:529.1 (the Habitual Offender Statute) as a third felony offender to imprisonment at hard labor for a term of forty months, with credit for time served, to run concurrently with defendant’s sentence on count two, and consecutively with any other sentence defendant was currently serving. This timely appeal followed.

FACTS

At trial, Deputy David Dalton of the Jefferson Parish Sheriffs Office (the “JPSO”), testified that on March 14, 2009, he was working in the Jefferson Parish Correctional Center (the “JPCC”) with Deputy Raquel Scott. Deputy Dalton | ¿observed defendant in the day room area of one of the inmate pods[1] of the JPCC with his orange jumpsuit unbuttoned and with one of his arms not properly inside the sleeve. He explained that the inmates were required to be properly dressed while in the day room area. Deputy Scott ordered defendant to get properly dressed, but he ignored her. Defendant also ignored Deputy Scott’s second order to get properly dressed; rather, he walked to the bathroom area of the day room, where inmates were not required to be properly dressed. When defendant exited the bathroom area, he again was not properly dressed. Defendant was warned that he would be “written up” for not being properly dressed; he responded that he did not care about being written up. Defendant then proceeded towards the food tray area of the day room.
Deputy Dalton then left the area to obtain the necessary write-up form. When he returned, Sergeant Pier Harris was in the hallway area speaking through the door, telling defendant to get properly dressed. When defendant did not comply with his orders, Sergeant Harris called for backup. Sergeant Harris and Sergeant Simmie Carter then entered the day room and ordered defendant to “lockdown,” which meant that defendant was required to go directly to his cell. Although Deputy Dalton testified that he saw defendant in a physical altercation with the two sergeants, he stated that he did not observe any injuries to defendant or to the officers.
Sergeant Simmie Carter[2] of the JPSO testified that on March 14, 2009, he was working at the JPCC when he responded to a call for assistance on Pod 4-C. He entered the day room area of the pod with Sergeant Harris and observed defendant in the day room area not properly dressed. Sergeant Carter described | (¡defendant as being in a “defensive mode” and angry. When he asked defendant what was wrong, defendant did not respond. Sergeant Carter then told defendant that if he was not going to be properly dressed, he would have to lockdown in his cell. Defendant refused several orders to lockdown and used obscenities stating that he was not locking down and did not care about the officers’ orders. Defendant then walked towards Sergeant Carter with his hands closed in balled fists. Sergeant Carter stepped back as defendant continued approaching him. Defendant then backed Sergeant Carter into a corner in the shower area. At that point, Sergeant Carter pushed defendant to “create distance” between himself and defendant and *211 continued to order defendant to lockdown in his cell. Defendant again refused to comply.
When defendant continued approaching him, Sergeant Carter deployed pepper spray to defendant’s face, which was ineffective. Defendant then grabbed Sergeant Carter’s arm, prompting Sergeant Carter to strike defendant’s outer leg area below his knees with his baton. These strikes to defendant’s leg area were ineffective; defendant was still not subdued. Sergeant Carter testified that at that point, Sergeant Harris deployed his baton and struck defendant in the back area. Defendant then grabbed Sergeant Harris’ baton and pinned Sergeant Harris against the corner of the shower area. Sergeant Carter continued to strike defendant in the leg area. When defendant saw that other officers had arrived on the scene, he dropped to his knees in a fetal position, surrendered, and was handcuffed.
Sergeant Pier Harris testified that on March 14, 2009, he was conducting a security check in Pod-4C of the JPCC when he observed defendant in the day room, not completely dressed, with his jumpsuit just halfway on his body. He spoke to defendant through the corridor door and ordered him to put his jumpsuit completely on; defendant refused. After he and Sergeant Carter entered the day 17room, defendant grabbed Sergeant Carter’s arm. In response, Sergeant Carter pepper-sprayed him. The pepper spray had no effect on defendant, who continued approaching Sergeant Carter. Defendant then touched Sergeant Carter again. Defendant ignored another order to step back and continued moving forward. Sergeant Carter then used his baton to strike defendant on the leg. After defendant backed Sergeant Carter towards the corner, Sergeant Harris also used his baton to strike defendant on the leg. Sergeant Harris testified that defendant then grabbed his baton, tried to take it from him, and continued to push him back against the wall.
On cross-examination, Sergeant Harris testified that defendant was unable to take his baton away from him. Sergeant Harris testified that to his knowledge, he did not strike defendant in the head, nose, or lip; however, defendant was “weaving and bobbing and ducking” throughout this altercation. Due to defendant’s injuries, he was transported to the hospital. On redirect examination, Sergeant Harris testified that no one, including himself and Sergeant Carter, used any force that was not necessary to subdue defendant who was resisting them.
After the State rested, the defense called Priscilla Crum of the JPSO to the stand. She testified that on March 14, 2009, she was working as a nurse in the clinic at the JPCC. She first encountered defendant on the floor of the pod lying flat on his stomach. Defendant’s injuries included a two-inch wide gash on the back of his head, a swollen bloody nose, and a swollen arm. There was a lot of blood at the scene. She recommended that defendant go to the hospital because it appeared that his nose was broken.
The defense also called Deputy Tijuana Kelly of the JPSO, who testified that as part of her assignment with the Special Investigations Unit, she investigated the March 14, 2009 incident involving defendant. According to Deputy Kelly, none of lathe officers stated that they hit defendant in the head, mouth, or nose. None of the officers reported to her that they were cut or bleeding as a result of the incident. She also interviewed defendant after he returned from the hospital.
Deputy William Whittington of the JPSO was also called as a defense witness. He testified that he responded to the incident involving defendant. When *212 he arrived, he observed Sergeant Carter standing over defendant. He believed defendant was already handcuffed. Defendant was bleeding and had lacerations on his face. There was a mixture of blood and pepper spray on the ground. Defendant appeared upset, angry, aggressive, and may have exchanged threatening words with the officers on the scene.

PRO SE ASSIGNMENT OF ERROR NO. ONE

Sufficiency of the evidence[3]
Besides the counseled brief filed on behalf of defendant, defendant also filed a pro se supplemental appellate brief. In his first pro se assignment of error, defendant argues that the evidence presented at trial was insufficient to support the verdicts rendered against him. Particularly, defendant argues that Deputy Dalton’s testimony included hearsay as to statements made by Deputy Scott, who did not testify in his case. Defendant also asserts that Deputy Dalton testified that he only saw flashes of what occurred because he was taking notes by writing down a time-line of the incident. Defendant further argues that on cross-examination, Deputy Dalton testified that he did not see defendant threaten the officers and did not observe any injuries to the officers.
| flDefendant also argues that Sergeant Carter testified that when he arrived at the pod, he did not observe defendant in confrontation with anyone or that defendant was in a “defensive mode.” Defendant argues that Sergeant Carter testified that the first time defendant caused a disturbance was when defendant walked towards him with his hands closed in balled fists and ignored his command to lock-down. Defendant argues that the prosecutor asked Sergeant Harris leading questions, and it was only after being asked leading questions that Sergeant Harris testified as to an altercation between himself, defendant, and Sergeant Carter.
Defendant argues that despite being ordered to properly dress, he did not provoke anyone to strike or push him for any reason. He asserts that he only protected himself after both officers struck him with their batons. Defendant argues that contrary to the officers’ testimony, in addition to being struck in his legs, he was struck in the head, face, arms, and back. Defendant concludes that the evidence was insufficient to convict him of battery of a police officer while under the jurisdiction of the Jefferson Parish Department of Corrections.

Analysis

The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. State v. Harrison, 06-897 (La.App. 5 Cir. 3/27/07), 957 So.2d 199, 201 (citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Collins, 04-1443 (La.App. 5 Cir. 7/26/05), 910 So.2d 454, 457).
In the present case, defendant was convicted of two counts of battery of a police officer while being detained in a correc *213 tional facility, in violation of La. |inR.S. 14:34.2(B). At the time of the subject incident, La. R.S. 14:34.2 provided, in pertinent part:
(A)(1) Battery of a police officer is a battery committed without the consent of the victim when the offender has reasonable grounds to believe the victim is a police officer acting in the performance of his duty.
(2) For purposes of this Section, “police officer” shall include commissioned police officers, sheriffs, deputy sheriffs, marshals, deputy marshals, correctional officers, federal law enforcement officers, constables, wildlife enforcement agents, state park wardens, and probation and parole officers.
(B)(1) Whoever commits the crime of battery of a police officer shall be fined not more than five hundred dollars and imprisoned not less than fifteen days nor more than six months without benefit of suspension of sentence.
(2) If at the time of the commission of the offense the offender is under the jurisdiction and legal custody of the Department of Public Safety and Corrections, or is being detained in any jail, prison, correctional facility, juvenile institution, temporary holding center, halfway house, or detention facility, the offender shall be fined not more than one thousand dollars and imprisoned with or without hard labor without benefit of parole, probation, or suspension of sentence for not less than one year nor more than five years. Such sentence shall be consecutive to any other sentence imposed for violation of the provisions of any state criminal law.
* * *
Further, La. R.S. 14:33 defines battery, in pertinent part, as “the intentional use of force or violence upon the person of another”.
In the present case, the State presented the testimony of Deputy Dalton, who stated that he observed defendant refuse to follow orders and refuse to lockdown in his cell, and that he further observed defendant in a physical altercation with other officers. Sergeants Carter and Harris both testified that defendant refused to follow orders, approached Sergeant. Carter with balled fists, and backed him into a corner in the shower area. Sergeants Carter and Harris also both testified that defendant |ngrabbed Sergeant Carter’s arm, grabbed Sergeant Harris’ baton, and then pinned Sergeant Harris against the corner of the shower area. Sergeant Harris testified that defendant touched Sergeant Carter again after grabbing his arm. He also testified that while struggling over Sergeant Harris’ baton, defendant pushed Sergeant Harris back towards the wall.
In this Court’s previous decision in Harrison, swpra, testimony indicated that during a search of the inmate housing areas, the defendant in that case refused to comply with the officers’ orders to spread his feet wider and place his hands higher on the wall. When an officer physically adjusted the defendant’s feet and hands, the defendant began “mouthing off’ and making threats towards the officers. One of the defendant’s wrists was handcuffed and placed behind his back. The defendant twisted away from the wall, and the officer pushed the defendant back on the wall.
When other officers intervened, a struggle began between the officers, including the original officer, and the defendant. *214 During the struggle, the defendant struck the original officer with his handcuffed hand, bit one officer’s finger, and kicked another officer in the shin. Despite the defendant’s testimony at trial that he did not touch the officers and that the officers “beat him up,” this Court found that a rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty of two counts of battery of a police officer “while in jail.” Harrison, 957 So.2d at 200-02.
Similar to Harrison, in the present case, all of the State’s witnesses testified to a physical altercation between defendant and Sergeants Carter and Harris. Sergeants Carter and Harris testified that defendant grabbed Sergeant Carter’s arm, pushed Sergeant Carter into a corner, and pushed Sergeant Harris against the wall. The trier of fact makes credibility determinations and may, within the bounds of | ^rationality, accept or reject the testimony of any witness; thus, a reviewing court may impinge upon the fact-finder’s discretion only to the extent necessary to guarantee fundamental due process of law. Harrison, 957 So.2d at 202 (citing State v. Howard, 98-64 (La.4/23/99), 751 So.2d 783, 801, cert. denied, 528 U.S. 974, 120 S.Ct. 420, 145 L.Ed.2d 328 (1999)). In returning the guilty verdicts, the jury obviously rejected the defense’s version of the events and resolved any credibility issues in favor of the State. Harrison, 957 So.2d at 202. Upon review, we find that a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. This assignment of error is without merit.

COUNSELED ASSIGNMENT OF ERROR NO. ONE

Improper remarks of the prosecutor during opening statement

In his first counseled assignment of error, defendant argues that in the State’s opening statement, the prosecutor stated that an absent witness’s testimony would have corroborated the testimony of the three witnesses testifying on behalf of the State. Defendant contends that the trial court erred in overruling defense counsel’s objection to the prosecutor’s remark. Defendant argues that the prosecutor’s remark violated Rule 3.4(e) of the Louisiana State Bar Association’s Rules of Professional Conduct because the prosecutor “allude[d] to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence ... ”. Defendant asserts that the Rules of Professional Conduct have the force and effect of substantive law.
Defendant argues that when the trial court overruled the defense’s objection, the jury was led to believe that the prosecutor’s statement could be accepted as true that the absent witness’s testimony would have corroborated the testimony of the State’s other witnesses. Defendant argues that the trial court’s ruling on the | isdefense objection was not harmless error because the State’s case rested entirely on the credibility of the three witnesses who testified that defendant was only struck on his legs and back. Defendant asserts that there was a problem with those witnesses’ testimony because the defense’s witnesses testified that defendant suffered blows to his head and face.
Defendant argues that based on the harmless error rule, the reviewing court must determine whether the guilty verdict may have been attributable to the error. Defendant asserts that the failure of the trial court to admonish the jury to disregard the improper argument lent even greater weight to the improper argument.
The State argues that defense counsel failed to provide a legal basis for the objec *215 tion and that no evidentiary rules were cited. The State asserts that defense counsel failed to base its objection on the Rules of Professional Conduct, which was cited for the first time on appeal. The State therefore argues that defendant’s claim was not preserved for appeal.
Alternatively, the State argues that defendant’s claim has no merit. The State asserts that the prosecutor’s statement is not evidence and has no probative force. The State contends that if the appellate court finds that the prosecutor’s argument contained improper remarks, a reversal is warranted only if the court is convinced that the jury was influenced by the remarks and that the remarks contributed to the verdict.
The State further argues that if the jury was persuaded by the prosecutor’s remark, any error was harmless. The State asserts that the harmless error standard requires the reviewing court to focus on the erroneously admitted evidence to determine whether there is a reasonable possibility that the error complained of contributed to the verdict. The State contends that due to the overwhelming 114evidence of guilt in this case, it could not be determined that the alleged error prejudiced defendant.
The record reflects that during the State’s opening statement, the prosecutor stated the following:
There are really four State witnesses in this case. However, one of them unfortunately did not receive a subpoena and went out of town before we realized this case was set for trial, so that was the original guard who was the first one there.
However, there were other officers who were there and will tell you the same thing that she could tell you. And so that’s why we elected to go to trial today instead of waiting.
Defense counsel responded with an objection by stating, “Your Honor, if I may object to what that officer would testify to. He’s not even calling her, but he’s telling them (the jury) what she would testify to.... And he can’t say that if she’s not going to testify.” The Court ruled on the objection stating, “Okay. I’ll allow it. It’s opening statement. It’s not testimony. It’s just opening statement.” Although defense counsel again noted his objection, the defense never requested a mistrial or an admonition.

Analysis

Article 766 of the Louisiana Code of Criminal Procedure provides that “[t]he opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge.” The opening statement is designed to inform the jury so they may understand the evidence as it unfolds and to protect the defendant from surprise. State v. Williams, 03-942 (La.App. 5 Cir. 1/27/04), 866 So.2d 1003, 1012, writ denied, 04-450 (La.6/25/04), 876 So.2d 832 (citing State v. Green, 343 So.2d 149, 151 (La.1977)). Statements made outside the permissible scope of an opening 11sstatement may result in a mistrial under La.C.Cr.P. arts. 770 and 771. Id. (citing State v. Robinson, 598 So.2d 407, 412 (La.App. 5 Cir.1992)).
Article 770 of the Louisiana Code of Criminal Procedure, regarding prejudicial remarks, provides that:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
1) Race, religion, color, or national origin, if the remark or comment is not *216 material and relevant and might create prejudice against the defendant in the mind of the jury;
2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
3) The failure of the defendant to testify in his own defense; or
4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
In addition, Article 771 of the Louisiana Code of Criminal Procedure provides, in pertinent part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
* * *
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
These Articles (770 and 771) both require the defendant to move for a mistrial or request an admonition in order for the court to grant a mistrial or give an admonition. In the present case, defendant failed to request a mistrial. “The failure of defense to move for a mistrial is a waiver of the error.” State v. Ohlsson, 12-708 (La.App. 5 Cir. 4/24/13), 115 So.3d 54, 65. Defendant also failed to request an admonition, and “in the absence of such a request, the trial judge need not admonish the jury.” State v. Ratcliff, 98-101 (La.App. 5 Cir. 2/23/99), 731 So.2d 356, 363-64, writ denied, 99-1112 (La.9/3/99), 747 So.2d 541 (citing State v. Mayer, 589 So.2d 1145, 1151 (La.App. 5 Cir.1991), writ denied, 609 So.2d 251 (La.1992)). For these reasons, defendant is proeedurally barred from raising this issue on appeal. Ohlsson, supra.
However, a review of the merits of defendant’s argument indicates that it is without merit. It is well settled that the trial judge has wide discretion in controlling the scope and extent of the opening statement. State v. Trahan, 576 So.2d 1, 12 (La.1990). In the present case, in response to defense counsel’s objection, the trial court pointed out that the statement was not testimony, which was sufficient to alert the jury that the opening statement was not evidence thereby alleviating any prejudice to defendant.
Further, even if the trial court’s ruling was erroneous, any error resulting therefrom was harmless. Here, the jury was presented with the testimony of the two officers involved in the altercation with defendant. Both officers testified that defendant grabbed Sergeant Carter’s arm and pushed Sergeant Harris against a wall. Given this substantial evidence of defendant’s guilt, it is unlikely that the jury relied on the prosecutor’s comment that the absent witness’s testimony would *217 corroborate that of the other officers in reaching their verdict.
This assignment of error is without merit.
1 „PRO SE ASSIGNMENT OF ERROR NO. TWO

Ineffective assistance of counsel

In this assignment of error, defendant argues that he was deprived of the right to effective assistance of counsel, specifically arguing that defense counsel: (1) failed to object to the failure of the bill of information to reflect the victims’ names; (2) failed to make a timely Batson[4] objection; (3) failed to interview potential alibi witnesses and prepare a defense for trial; and (4) was also ineffective during the improper enhancement under La. R.S. 15:529.1.[5]

Analysis

A claim for ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief, filed in the trial court, where a full evidentiary hearing can be conducted, rather than through direct appeal. State v. Chappell, 11-148 (La.App. 5 Cir. 12/28/11), 83 So.3d 216, 223. However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. Id. Nevertheless, where the record does not contain sufficient evidence to fully explore a claim of ineffective assistance of counsel, the claim should be relegated to post-conviction proceedings. Id.
Although we address defendant’s claim regarding the alleged defect in the bill of information in our errors patent review, infra, when the record contains insufficient evidence to consider all of the allegations of ineffectiveness of counsel, this Court has declined to address any of the claims stating that the entirety of the claims are more properly addressed in an application for post-conviction relief. State v. Horton, 09-250 (La.App. 5 Cir. 10/27/09), 28 So.3d 370, 377-78 (citing State v. Allen, 06-778 (La.App. 5 Cir. 4/24/07), 955 So.2d 742, 752, writ denied, 08-2432 (La.1/30/09), 999 So.2d 754). Therefore, we will not address defendant’s claims of ineffective assistance of counsel in this appeal because they would be more properly addressed in their entirety by the trial court on post-conviction relief.

ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).

Defective bill of information

First, we note that the bill of information does not name the officers who were the victims of the charged offenses.
Louisiana Code of Criminal Procedure article 473, concerning identification of the victim, provides that:
When the name of the person injured is substantial and not merely descriptive, such as when the injury is to the person, as in murder, rape, or battery, the indictment shall state the true name of the *218 victim or the name, appellation, or nickname by which he is known. If the name, appellation, or nickname of the victim is not known, it is sufficient to so state and to describe him as far as possible. In stating any name of a victim it is sufficient to state a surname, a surname and one or more given names, or a surname and one or more abbreviations or initials of a given name or names.
The requirement for identification of the victim is made constitutionally necessary under certain accusations in order that the accused be properly informed of the accusation against him and not be twice placed in jeopardy for the same offense. State v. Dozier, 258 La. 323, 332, 246 So.2d 187 (La.1971).
The Louisiana Supreme Court held in State v. James, 305 So.2d 514, 519-20 (La.1974), that when there is an error in the bill of information, there must also be 119a determination of actual surprise or prejudice to constitute reversible error. “[T]he technical sufficiency of the bill of information may not be questioned after conviction where the accused has been fairly informed of the charge against him, has not been prejudiced by surprise or lack of notice, has not raised an objection to the bill prior to the verdict, and is protected against further prosecution by examination of the pleadings and the evidence on the present conviction.” State v. Robinson, 11-12 (La.App. 5 Cir. 12/29/11), 87 So.3d 881, 912-913, writ denied, 12-279 (La.6/15/12), 90 So.3d 1059 (citing James, supra).
In the present case, the bill of information is defective because it failed to name the officers who were the victims of the charged offenses. The minute entry of the arraignment and the appellate record do not contain any objection to the bill of information prior to the verdict. Nevertheless, the record does not show any prejudice to defendant or that defendant was surprised by any lack of notice. Both victims were called to the stand by their correct names and testified without any confusion as to the identification of the victims. Further, defendant is protected from double jeopardy by examination of the pleadings and evidence of the present conviction.

Sentencing errors

Next, we note two errors in defendant’s sentence. First, in sentencing defendant, the trial court failed to specifically impose statutory restrictions on benefits according to La. R.S. 14:34.2(B)(2), which provides in pertinent part:
(2) If at the time of the commission of the offense the offender is under the jurisdiction and legal custody of the Department of Public Safety and Corrections, or is being detained in any jail, prison, correctional facility, juvenile institution, temporary holding center, halfway house, or detention facility, the offender shall be fined not more than one thousand dollars and imprisoned with or without hard labor without benefit of parole, probation, or suspension of sentence for not less than one year nor more than five years.
LnNonetheless, the trial court’s failure to specify this requirement at sentencing need not be corrected on remand because the “without benefits” provision of the statute is self-activating; thus no corrective action is required. State v. Bennett, 10-393 (La.App. 5 Cir. 3/29/11), 63 So.3d 251, 260, writ denied, 11-931 (La.10/21/11), 73 So.3d 381.
Second, defendant’s sentence is illegally lenient because the trial court failed to impose the mandatory fine required by La. R.S. 14:34.2(B)(2), which provides, in pertinent part, that “the of *219 fender shall be fined not more than one thousand dollars.” While this Court has the authority to correct an illegal sentence regardless of whether it is raised by either party, this authority is permissive rather than mandatory. Bennett, supra. This Court has previously declined to use its authority to correct a sentence that is illegally lenient due to failure to impose a mandatory fine where a defendant is indigent. Id. In the present case, defendant appears to be indigent because he was represented by appointed counsel in the trial court and is represented on appeal by the Louisiana Appellate Project. Accordingly, we decline to correct this sentencing error.

CONCLUSION

For the foregoing reasons, defendant’s convictions and sentences are affirmed.

AFFIRMED.

. “Pod” is used to refer to an inmate housing area of the jail.

. At the time of trial, Sergeant Carter had been promoted to Lieutenant, but will be referred to in this opinion as Sergeant for the sake of clarity and consistency.

. This assignment of error is addressed first because it challenges the sufficiency of the evidence. State v. Granger, 12-193 (La.App. 5 Cir. 10/30/12), 103 So.3d 576, 583, writ denied, 12-2587 (La.4/26/13), 112 So.3d 840 (citing State v. Hearold, 603 So.2d 731, 734 (La.1992)). When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. Hearold, supra.

. Batson v. Kentucky, 476 U.S. 79, 88-89, 106 S.Ct. 1712, 1718-19, 90 L.Ed.2d 69 (1986).

. We note here that defendant's multiple offender adjudication is not before us in this appeal, as defendant’s motion for appeal was filed prior to his multiple offender adjudication. If defendant wishes to appeal his multiple offender adjudication at this point, he must obtain an out-of-time appeal because more than thirty days have elapsed since his multiple offender adjudication.