917 So.2d 576 (2005)
STATE of Louisiana
v.
Barry V. JOHNSON.
No. 05-KA-180.
Court of Appeal of Louisiana, Fifth Circuit.
November 29, 2005.
*578 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Anne Wallis, Thomas Block, Assistant District Attorneys, Parish of Jefferson, Gretna, LA, for Plaintiff/Appellee.
Jane L. Beebe, Attorney at Law, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
CLARENCE E. McMANUS, Judge.
Defendant, Barry Johnson, was charged with armed robbery, a violation of LSA-R.S. 14:64. After trial by jury, defendant was convicted of the lesser offense of first degree robbery, a violation of LSA-R.S. 14:64.1. Pursuant to a multiple bill, defendant was adjudicated a second felony offender, and was sentenced as a second offender to thirty-five years at hard labor. Defendant now appeals from his conviction and sentence.

FACTS
Temega Crouch testified that on November 1, 2003, she was working at Players Sports Bar on Loyola Street in Kenner. At that time she had been dating defendant, Barry Johnson, for about five months. Crouch testified that defendant entered the bar wearing a black shirt and black pants. He asked her for a cigarette, and she refused him. Defendant left the bar by way of the front door.
Two to five minutes later, a man wearing a black shirt, black pants, and a mask entered the bar through the back door. Crouch testified that she recognized the man as defendant based on his walk and his voice. Defendant also had a distinctive tattoo on his arm. Defendant ordered Crouch to give him money, and he showed her a gun. Crouch gave him more than nine hundred dollars from the bar's two cash drawers.
Crouch testified that defendant forced her to walk with him to the bathroom. Once inside the bathroom, defendant ordered her to turn around and kneel. Defendant then put his gun against the back of her head and threatened to kill her. Defendant left the bar without harming Crouch. She then called police.
Detective Michael Cunningham testified that he investigated the robbery at Players Sports Club. He interviewed Crouch briefly at the bar, and she later gave a tape-recorded statement at the police department.
Detective Cunningham testified that a warrant was issued for defendant's arrest. Defendant turned himself in on November 6, 2003, at the Eastbank Lockup of the Jefferson Parish Sheriff's Office. From there, defendant was transported to the Kenner Lockup. Cunningham advised defendant of his Miranda[1] rights. Defendant waived his rights, and consented to a tape-recorded interview. The interview was transcribed and the tape was played for the jury.
*579 In his police statement, defendant admitted to having been at Players Sports Bar on November 1, 2003. He said his memory of what happened there was spotty, as he was under the influence of the drug Zanbar. Defendant admitted to wearing a mask during the incident. He said he had a gun, but that it was a fake made of plastic. Defendant recalled walking into the bar. The next thing he remembered was being in the bathroom with Temega Crouch. When he realized what he was doing, he left the bar. Defendant told Cunningham that he believed he had taken money from the bar, but that he did not know how much. Defendant said he had spent the money.

ANALYSIS
In his first allegation of error, defendant complains that the trial court erred in denying his mistrial motion and his Motion for New Trial. These motions were based on the State's failure to turn over the initial police statement made by the robbery victim, Temega Crouch. Defendant argues that the statement contained exculpatory evidence that would have aided him in impeaching Crouch's identification testimony.
In Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-1197, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." See also, State v. Bright, 02-2793, (La.5/25/04), 875 So.2d 37, 41. Evidence is "material" only if there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense. A reasonable probability is one which is sufficient to undermine confidence in the outcome. United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). A reviewing court determining materiality must ascertain "not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995).
Discovery violations are not grounds for reversal unless they have actually prejudiced the defendant. State v. Garrick, 03-0137 (La.4/14/04), 870 So.2d 990, 993 (per curiam); State v. Strickland, 398 So.2d 1062, 1067 (La.1981). Even a discovery violation involving the State's failure to disclose exculpatory evidence does not require reversal under the Due Process Clause "unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." Strickler v. Greene, 527 U.S. 263, 281, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999).
The Brady rule applies to both exculpatory and impeachment evidence. It encompasses evidence which impeaches the testimony of a witness when the reliability or credibility of that witness may determine guilt or innocence. Bagley, 473 U.S. at 676, 105 S.Ct. at 3380.
In the course of the robbery investigation, Ms. Crouch made two statements to police. The first was handwritten by the responding officer, and was originally attached to the police incident report. The second interview was conducted by Detective Cunningham at the police department, and it was tape recorded. In response to pre-trial discovery, the State gave the defense a typewritten transcript of the taped *580 statement, along with the police incident report. The incident report indicates that a voluntary written statement was obtained from Crouch, and that it was attached to the report. But the statement was not attached to the copy of the report that the State turned over to the defense. Minute entries dated March 1, 2004 and March 29, 2004 nonetheless indicate that pre-trial discovery was satisfied.
Crouch testified at trial that, although the robber wore a mask, she determined he was defendant based on his voice, his walk, and his tattoo. On cross-examination, defense counsel asked Crouch to describe defendant's tattoo. She stated that it is located on defendant's arm and depicts a cross and the words "Dishonor Over Death." Crouch said that she was able to see the tattoo because defendant was wearing a short-sleeved shirt at the time of the robbery.
Defense counsel questioned Crouch about her first police statement. Crouch testified that the investigating officer interviewed her and wrote her responses by hand. She said the gist of that statement was that she was robbed by Barry. She further testified that she did not tell the investigating officer that she could identify the perpetrator by his tattoos; she told him she identified defendant based on the way he walked and talked.[2]
Defense counsel played for the jury Defense Exhibit 1, which Crouch identified as a videotape of the robbery taken by the bar's security camera. As she watched the videotape, Crouch noted that defendant appeared to be wearing a short-sleeved shirt the first time he entered the bar, but the man who later entered the bar wearing a mask appeared to have on a long-sleeved shirt.
Defense counsel requested a bench conference, during which he complained that he did not have a copy of the handwritten statement with which to impeach Crouch's testimony. The trial court implicitly denied defendant's mistrial motion by noting counsel's objection and moving on with the trial.[3] Later in the proceedings, Detective Cunningham testified that he had conducted the tape recorded interview with Crouch, but that he did not have any knowledge of a handwritten statement. Cunningham also testified that it was difficult to discern from the security tape whether the perpetrator's shirt was short-sleeved or long-sleeved.
At the hearing on defendant's new trial motion on June 30, 2004, the prosecutor indicated that his investigator had located the handwritten statement after trial, and that defense counsel had been provided with a copy of it prior to the hearing. Defense counsel agreed that the two statements were not at odds with each other. He argued, nevertheless, that the statement would have allowed him to impeach the witness by pointing out that she had stated that defendant had a short sleeve shirt on and that she could see his tattoo on two occasions, contrary to what the videotape showed.
In denying the new trial motion, the court noted that, while the State should have supplied the defense with the handwritten statement prior to trial, the failure to do so was unintentional on the State's part. The court found that the handwritten *581 statement did not contain any information that was not disclosed to the jury by way of the victim's tape recorded statement and her testimony, and that the handwritten statement would not have changed the outcome of the trial.
We agree with the finding of the trial court. The handwritten statement contained virtually the same information as the tape recorded statement that was given to the defense prior to trial, and defense counsel was able to effectively impeach Crouch's testimony without the first statement. Accordingly, he suffered no prejudice.
We therefore find that the trial court did not err in denying defendant's Motion for New Trial, and that the trial court did not abuse its discretion in denying defendant's mistrial motion. This assignment of error is without merit.
In his second allegation of error, defendant contends that the trial court should have granted his motion to suppress the confession, as his statement to Detective Cunningham was not free and voluntary. Defendant argues that Cunningham, the only witness who testified with respect to the statement, gave conflicting, and thus unreliable, testimony.
At a hearing on a motion to suppress the statement or confession, the state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession. LSA-C.Cr.P. art. 703C; State v. Hills, 354 So.2d 186, 188 (1977); State v. McGee, 04-963, (La. App. 5 Cir. 1/11/05), 894 So.2d 398, 407, writ denied, 05-0593 (La.5/20/05), 902 So.2d 1050. Before the prosecutor may introduce the statement or confession into evidence, he must show that it did not result from fear, duress, intimidation, menace, threats, inducements, or promises. LSA-R.S. 15:451; State v. Lucky, 96-1687, (La.4/13/99), 755 So.2d 845, 855, cert. denied, 529 U.S. 1023, 120 S.Ct. 1429, 146 L.Ed.2d 319 (2000); State v. McLelland, 03-498, (La.App. 5 Cir. 10/15/03), 860 So.2d 31, 35, writ denied, 03-3372 (La.3/26/04), 871 So.2d 347. A statement obtained by direct or implied promises, or by the exertion of improper influence must be considered involuntary, and thus, inadmissible. State v. Jackson, 381 So.2d 485, 487 (La. 1980); State v. McLelland, supra. If the accused is in custody at the time he makes the statement, he must have been advised of his constitutional rights. Miranda v. Arizona, supra.
The determination of whether a waiver of constitutional rights is knowing and voluntary is made on a case-by-case basis, and that determination rests upon the "totality of the circumstances." State v. Fernandez, 96-2719, (La.4/14/98), 712 So.2d 485, 487; State v. McGee, 894 So.2d at 407. The admissibility of a statement or confession is a determination for the trial judge and his conclusions regarding credibility and weight of the testimony concerning its voluntary nature will not be overturned unless unsupported by the evidence. State v. Thibodeaux, 98-1673, (La.9/8/99), 750 So.2d 916, 922, cert. denied, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000). In reviewing a trial court's ruling on a motion to suppress, the appellate court may consider the evidence adduced at the motion hearing as well as evidence at trial. State v. Collins, 04-255, (La.App. 5 Cir. 10/12/04), 886 So.2d 1149, 1154, writ denied, 04-2798 (La.3/11/05), 896 So.2d 62.
Defendant's argument concerns testimony surrounding the "pre-interview" Detective Cunningham conducted with him before beginning the tape-recorded interview. At the June 3, 2004 suppression hearing, Cunningham testified that he advised defendant of his rights using a standard *582 form. That was done at 2:10 p.m. Cunningham testified that defendant indicated he understood his rights, and that defendant waived those rights in his presence. The officer further testified that he did not use force, coercion or promises in order to obtain the statement. The transcript of the statement indicates that the interview began at 14:15 hours, or 2:15 p.m, on November 6, 2003.
On cross-examination, Cunningham testified that he conducted a pre-interview with defendant before he began the tape recording. This involved an explanation of the offense with which defendant was charged, and of how the recorded interview would be conducted. Cunningham testified that he did not elicit any details of the offense during that time. On re-direct examination, the officer stated that he read defendant his rights at 14:10, and that he began the interview five minutes later at 14:15 hours.
At trial, Cunningham testified that he spoke to defendant for about fifteen minutes before he began the taped interview. When defense counsel asked him what he told defendant about the offense during the pre-interview, Cunningham responded, "I just told him that, basically, we had a warrant, that his girlfriend had identified him as being in the robbery." Counsel then asked the officer if there was any discussion during the pre-interview about defendant's having taken Zanbar. Cunningham said, "I believe he had mentioned that, that he had taken some Zanbars."
In this appeal, defendant argues that the officer's response regarding the Zanbars contradicts his prior explanation regarding what he told defendant during the pre-interview. We first note that credibility determinations rest with the trier-of-fact, and will not be re-weighed on appeal. State v. Peden, 04-71, (La.App. 5 Cir. 5/26/04), 875 So.2d 934, 942. In any case, we believe that the officer's responses were not contradictory. Counsel's first question had to do with what Cunningham told defendant about the charged offense prior to the interview. It was defendant who told Cunningham about the Zanbars. The officer simply answered counsel's questions as asked.
Defendant contends that Cunningham's trial testimony that the pre-interview lasted fifteen minutes (as opposed to five minutes) calls into question the voluntariness of the confession, and the officer's credibility. The discrepancy in the officer's testimony is too small to raise questions as to the officer's reliability. In any case, there was no testimony at either the suppression hearing that the officer used force, coercion, or promises in order to obtain defendant's confession, or that defendant did not understand his rights and the consequences of waiving them.
We find no error in the trial court's denial of defendant's motion to suppress the confession. This assignment of error is without merit.
We have reviewed the record for errors patent in accordance with LSA-C.Cr.P.art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and find no errors which would warrant our attention.
In brief, the state alleges (although defendant does not) that the trial court committed a patent error in failing to give defendant credit for time served. However, the granting of credit for time served has long been self-operating under LSA-C.Cr.P. art. 880. Thus, it is no longer necessary for the Court of Appeal to amend a defendant's sentence to reflect credit for time served.
*583 For the above discussed reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] In actuality, the handwritten statement shows that Crouch described the tattoo to the officer.
[3] See, State v. Lee, 02-1793, (La.App. 4 Cir. 4/2/03), 844 So.2d 970, 994, writ denied, 03-1247 (La.10/10/03), 855 So.2d 330, in which the court equated the trial court's failure to rule on a mistrial motion with a denial of the motion.