CLARENCE E. McMANUS, Judge.
12Defendant, Lawrence Mangerchine, was convicted by jury of negligent homicide in violation of LSA-R.S. 14:32. After the denial of his motion for new trial, he was sentenced to five years at hard labor, with three years of the sentence suspended, giving credit for time served. Defendant now appeals, alleging that the trial court erred in denying his motion for new trial.
The facts adduced at trial are as follows. Beginning on New Year’s Eve of 2008 continuing to the morning of New Year’s Day of 2009, the victim and defendant, who were in a romantic relationship with one another, had been involved in several verbal arguments[1] and decided to end their relationship. Before the arguments ensued, the couple was residing with the victim’s mother and was planning to move into an apartment together. At 3:00 p.m. on New Year’s Day, defendant went to work at Whole Foods Market, where the victim brought defendant some of his personal items. After work, defendant continued on to his ex-wife’s home and spent the night mostly watching television on the sofa. In the | ¡¡early morning hours of January 2, 2009, the victim and defendant had a telephone conversation discussing a possible reconciliation. Defendant also planned to pick the victim up from her mother’s house and bring her to the bank to sign and deposit some cheeks to secure the apartment.
Defendant arrived at the victim’s residence at approximately 8:30 a.m. on January 2 in a white Ford F150 with a trailer in tow, and they proceeded to Regions Bank while discussing their relationship status in the vehicle. Because the bank was not yet opened, defendant stopped and purchased a 24 ounce beer. After purchasing a beer, the couple made their bank transactions and proceeded to Zuppardo’s, where they were going to drop off the trailer.
As the couple was traveling south down Transcontinental Drive, another argument developed and the victim threw defendant’s beer out of the window. At approximately 9:50 a.m., the arguing couple approached the red light at the busy intersection of Transcontinental Drive and Veterans Boulevard, in Metairie, where defendant unknowingly bumped into the vehicle in front of him, which was driven by Anthony Ritter. Defendant and Ritter exited their vehicles and Ritter instructed defendant to “cool it.” Defendant returned to his vehicle and resumed arguing with the victim. At some point during the argument, the victim punched the defendant in the nose and his nose began to bleed. The victim then exited the vehicle[2] and defendant locked the passenger side door. While punching on the outside mirror, the victim attempted to open the passenger’s side door to no avail then walked to the front of the truck and banged on the hood. Meanwhile, to scare the victim off of the road, the defendant depressed the brake and simultaneously pressed the gas pedal, revving the engine. The truck jolted and the victim moved *624 from in front of the truck and proceeded to the driver’s side door, again yelling and | Ranging on the window and outside mirror. Before the victim reached the door of the truck, the light turned green. The defendant locked his door, rolled up his window, and began to drive his vehicle forward. While yelling and screaming, the victim grabbed the door handle, trying to re-enter the vehicle, and was carried forward a few steps before she lost her footing[3], spun around, and fell underneath the vehicle. The victim was rolled over by the rear driver’s side wheel of the truck and the trailer before defendant saw the victim on the ground, realized what had happened, and stopped the vehicle.[4]
Defendant stopped the vehicle, went to the back of the truck to assist the victim, and yelled for someone to call 9-1-1.[5] When he realized that the bystanders were focused on the victim, he returned to his truck in search of his phone. At that time, defendant was apprehended and detained until the police arrived.
After the police obtained witness statements, defendant was advised of his Miranda rights and placed under arrest. Defendant passed a field sobriety test at the scene and was later taken to East Jefferson General Hospital, where he was examined for injury and his blood was tested. The blood test later returned negative results for drugs and alcohol. Once defendant left the hospital, he was taken to the Detective’s Bureau, where he gave a statement to Detective Jeffrey Rodrigue, after being advised of and waiving his Miranda rights. After a judge found probable cause, defendant was booked on the morning of January 3, 2009.
The victim was taken to University Hospital where she expired during surgery. Dr. Susan Garcia performed an autopsy on the victim. The victim’s |stoxicology report reflected that her blood samples tested positive for methadone, caffeine, and alcohol.[6]
In his sole allegation of error, the defendant alleges that the trial court erred in failing to grant the motion for new trial, in which he argued that new and material Brady[7] evidence existed regarding the victim’s 2004 arrest for domestic violence.
The defendant asserts that the trial court erred in failing to grant the motion for new trial because the State clearly violated discovery rules. In particular, defendant argues that the State failed to timely disclose before trial that the victim was arrested in 2004 for punching her ex-husband in the nose and was participating in a Jefferson Parish District Attorney’s Diversion Program at the time of her death. (The State did not disclose the evidence until after trial.) Defendant’s theory of the case was that he was punched in the nose and was trying to get away from a violent situation. He argues that the late disclosure prejudiced his case *625 because he did not take the stand due to a lack of tangible corroborating evidence.
Defendant also asserts that in a negligent homicide, it was crucial for the jury to understand his state of mind. He further adds that the proof of the previous arrest would have corroborated that his actions were in self-defense rather than negligent, thus making it a Brady violation. Finally, defendant contends that the guilty verdict was attributable to the error, thus the error denied him of due process and a fair trial and was not harmless.
The State responds that the trial court was correct in denying the defendant’s motion for new trial because the evidence was not newly discovered, as the defendant knew of the victim’s abusive behavior towards her ex-husband prior to |fitrial. It further argues that the evidence was cumulative, irrelevant, and inadmissible character evidence, it did not fall within the scope of Brady material, and even if considered Brady material, there was no showing of prejudice. Finally, it argues that even assuming that the late disclosure was erroneous, it was harmless because the evidence would not have changed the verdict and did not undermine the confidence in the verdict. The State asserts that the defendant chose not to testify because it would have hurt his case, because he had prior DWI convictions and because he was drinking at the time of the accident. Moreover, the State was planning to admit evidence that defendant battered the victim the night before the incident when he previously stated that he never hit the victim.
LSA-C.Cr.P. art. 851(3) provides that on motion of the defendant, the court shall grant a new trial when “[n]ew and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty[.]” State v. Bazley, 09-358, p. 22 (La.App. 5 Cir. 1/11/11), 60 So.3d 7, 21, writ denied, 11-0282 (La.6/17/11), 63 So.3d 1039. As such, when the motion for a new trial is based on newly discovered evidence, the following four requisites must be met: (1) the evidence must have been discovered since the trial; (2) the failure to learn of the evidence at the time of trial was not due to defendant’s lack of diligence; (3) the evidence must be material to the issues at trial; and (4) the evidence must be of such a nature that it would probably produce an acquittal in the event of a retrial. Id. (citation omitted). The trial court’s ruling as to whether these requisites are met is entitled to great weight and a denial of a motion for new trial will not be disturbed on appeal absent a clear abuse of that discretion. Id., 09-358 at 22-23, 60 So.3d at 21. (citation omitted).
7In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 1196-1197, 10 L.Ed.2d 215 (1963), the United States Supreme Court held “that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.”[8] Favorable evidence includes both *626 exculpatory evidence and evidence that impeaches the testimony of a witness whose credibility or reliability may determine guilt or innocence. In re Jordan, 04-2397 (La.6/29/05), 913 So.2d 775, 782, (citing Giglio v. United, States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)); State v. Calloway, 97-796 (La.App. 5 Cir. 8/25/98), 718 So.2d 559, 562, writs denied, 98-2435 and 98-2438 (La.1/8/99) 734 So.2d 1229, (citing U.S. v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).
Evidence is material only if there is a reasonable probability that the results of the proceeding would have been different if the evidence had been disclosed to the defense. A “reasonable probability” is that which is sufficient to undermine confidence in the outcome of the trial. State v. Johnson, 05-180 (La.App. 5 Cir. 11/29/05), 917 So.2d 576, 579, writ denied, 06-1254 (La.12/15/06), 944 So.2d 1282, (citing U.S. v. Bagley, supra). In determining materiality, a reviewing court must ascertain “not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of Isconfidence.” Johnson, supra, (citing Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995)).
The U.S. Supreme Court has explained that “[t]there are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.” Strickler v. Greene, 527 U.S. 263, 281-282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); State v. Louviere, 00-2085 (La.9/4/02), 833 So.2d 885, 896, cert. denied, 540 U.S. 828, 124 S.Ct. 56, 157 L.Ed.2d 52 (2003).
In Kyles, 115 S.Ct. at 1567, the United States Supreme Court made clear that materiality is not determined item by item but by the cumulation of the suppressed evidence. Thus, even if each item by itself would not warrant a new trial, the accumulation may.
“Late disclosure as well as nondisclosure of evidence favorable to the defendant requires reversal if it has significantly impacted the defendant’s opportunity to present the material effectively in its case and compromised the fundamental fairness of the trial.” State v. Harris, 01-2730 (La.1/19/05), 892 So.2d 1238, 1250, cert. denied, 546 U.S. 848, 126 S.Ct. 102, 163 L.Ed,2d 116 (2005). The impact on the defense of late disclosure of favorable evidence must be evaluated in the context of the entire record. Id.
Defendant complains that the victim’s arrest record was requested; however, evidence of her 2004 arrest for punching her ex-husband was not disclosed until after trial. Defendant urges that he should have been granted a new trial or a mistrial, pursuant to LSA-C.Cr.P. art. 718, which allows the trial court to enter any order appropriate for failure to comply with discovery rules. As stated above, there are three components of a Brady violation: 1) the evidence must be favorable: | aexculpatory or impeaching; 2) the evidence must have been suppressed; and, 3) the defendant must have been prejudiced.
*627 The evidence of the victim’s 2004 arrest does not appear to be exculpatory or possess impeachment value. Exculpatory evidence by definition is that “which tends to justify, excuse or clear the defendant from alleged fault or guilt.” State v. Lande, 06-24, p. 24 (La.App. 5 Cir. 6/28/06), 934 So.2d 280, 296, writ denied, 06-1894 (La.4/20/07), 954 So.2d 154, (citing Black’s Law Dictionary, Sixth Edition). Evidence of the victim’s arrest for punching her ex-husband does not appear to clear defendant from guilt due to his negligence in driving away from the victim, whom he knew was holding the door handle. Nor does it appear to undermine the confidence in the jury verdict, as the jury heard similar evidence involving the victim’s assaultive behavior against the defendant himself both prior to and at the time of the incident and still came to the guilty verdict. As such, the 2004 arrest evidence does not seem likely to have affected the jury’s determination so as to result in an acquittal or otherwise undermine confidence in the verdict.
Furthermore, there was overwhelming evidence of defendant’s gross deviation from the standard of care. By defendant’s own admission, he was drinking and driving, he revved his engine and caused his vehicle to jolt forward while the victim was in front of it, and he drove forward knowing that the victim was alongside his vehicle holding on to the door. Therefore, we find that the evidence of the 2004 arrest is not exculpatory or otherwise material to the defendant’s case.
Converse to defendant’s assertions, his state of mind was not relevant to the jury’s determination, because intent was not required to prove the elements of negligent homicide, under LSA-R.S. 14:32, which requires only the killing of a human being through criminal negligence. Criminal negligence is gross deviation Imfrorn the standard of care expected of a reasonably careful person under similar circumstances. See LSA-C.Cr.P. art. 12.
A self-defense argument appears to be equally implausible because defendant was attempting to escape, not fight force with force. In addition, a homicide is only justifiable when one reasonably believes he is in danger of losing his life or receiving great bodily harm, which was not the case because the victim was not armed and could not injure defendant, who was inside the vehicle. LSA-C.Cr.P. art. 20. Accordingly, we find nothing in the evidence tended to clear the defendant from guilt.
Further, this evidence does not appear to have impeachment value. Conversely, the evidence appears to corroborate the defendant’s account of the events. Although the defendant argues that the evidence could have been used to impeach Atoinette Madsen, the victim’s sister, the record does not reflect that Madsen testified contrary to the evidence involving the victim’s 2004 arrest. Therefore, this argument is speculative.
Because the evidence was neither material, exculpatory, nor impeaching, we find that the unpunctually disclosed evidence failed to meet the requirements to be considered a discovery violation under both Brady and LSA-C.Cr.P. art. 718.[9]
*628 Considering the foregoing, we find that the trial court did not abuse its discretion in denying defendant’s motion for new trial. The unpunctually disclosed evidence does not appear to be newly discovered, as the defendant has admitted he was aware of it. The evidence is not material, exculpatory, or impeaching, thus the late disclosure did not amount to a Brady violation or otherwise violate the |ndiscovery rules. The defense could have found the evidence after a diligent search. And finally, the evidence is not of a nature that would have produced an acquittal at trial.
The Defendant requests an error patent review. This Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether defendant makes such a request. Our review reveals no errors patent in this case.
Finding no merit to defendant’s allegation of error, and no error patent requiring our attention, we affirm the defendant’s conviction and sentence.

AFFIRMED

. In his statement to police, defendant indicated that they were arguing over addiction problems. The victim’s addiction was methadone, Xanax, and other prescription drugs, and defendant’s was alcohol.

. The evidence at trial did not establish whether the victim voluntarily or involuntarily left the vehicle. In his statement, the defendant declared that the victim voluntarily exited the vehicle.

. Eyewitness Kathy Chaves testified that the truck grazed the victim causing her to fall.

. There is conflicting testimony as to whether defendant stopped the truck after the victim was rolled over by the rear driver’s side wheel of the truck, but before she was rolled over by the trailer.

. The defendant’s demeanor after the accident and whether he went to assist the victim is unclear.

. The report also reflects a positive screening for amphetamine and benzodiazepine; however, further testing to confirm the existence of those drugs was not performed.

. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

. See also, LSA-C.Cr.P. art. 718 which provides:
Subject to the limitation of Article 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the state, and which:
*626 (1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or
(2) are intended for use by the state as evidence at the trial, or
(3)were obtained from or belong to the defendant.
The court may determine whether evidence is subject to the provisions of paragraph (1) hereof by in camera inspection.

. Although the defendant does not meet the first prong of Brady, it is also noted that there is no indication defendant was prejudiced by the late disclosure of the above evidence under the third prong, which requires a showing of prejudice. (See Kyles v. Whitley, 115 S.Ct. at 1555, where the United States Supreme Court stated, ”[w]e evaluate the tendency and force of the undisclosed evidence item by item; there is no other way. We evaluate its cumulative effect for purposes of materiality separately and at the end of the discussion.”)