ROBERTA. CHAISSON, Judge.
1 gDefendant, Ronald Ohlsson, appeals several convictions arising from the theft of a vehicle and the armed robberies of three bars in Jefferson Parish in July of 2010. For the reasons that follow, we affirm his convictions and sentences and remand the matter for correction of the commitmenVminute entry.

PROCEDURAL HISTORY

On September 8, 2010, the Jefferson Parish District Attorney filed a bill of information charging defendant with one count of possession of a firearm by a convicted felon, in violation of LSA-R.S. 14:95.1 (count one); three counts of armed robbery, violations of LSA-R.S. 14:64 (counts two, three, and four); and one count of illegal possession of stolen things valued at over $500.00, in violation of LSA-R.S. 14:69 (count five). At his September 7, 2010 arraignment, defendant pled not guilty.
|sThis matter proceeded to trial before a twelve-person jury on February 7, 2012. After considering the evidence presented, the jury, on February 10, 2012, found defendant guilty as charged. On February 24, 2012, the trial court sentenced defendant to fifteen years imprisonment at hard labor and imposed a fine of $1,000.00, on count one; to twenty-five years imprisonment at hard labor on counts two, three, and four; and to ten years imprisonment at hard labor on count five. The court ordered that all sentences be served consecutively and that the sentences as to counts one, two, three, and four be served without benefit of parole, probation, or suspension of sentence.
As to count four, the State thereafter filed a bill of information pursuant to the provisions of LSA-R.S. 15:529.1, alleging that defendant was a seventh felony offender. After a hearing on May 29, 2012, the trial court found defendant to be a triple felony offender, vacated defendant’s original sentence on count four, and imposed an enhanced sentence of life imprisonment without benefit of parole, probation, or suspension of sentence. Defendant now appeals.

FACTS

These charges arise from a series of robberies that occurred in July of 2010, at three different bars in Jefferson Parish.

Turtle Bar

On July 18, 2010, Catherine Bright was working as a bartender at the Turtle Bar. At approximately 2:10 p.m., she noticed a man drive into the parking lot, back his car in and out of one of the parking spaces, and eventually park. A few minutes later, a man walked into the bar, pointed a gun at the patrons, and told everyone to get on the floor. Bright got down on the floor *58 behind the bar. The perpetrator walked over to her, pointed a gun at her, and asked for the poker money. After Bright opened the drawer, the man told her to open the cash register. l4Bright complied and then returned to her position on the floor. The man took money from the poker drawer and from the cash register before leaving in a car that looked like an old Toyota. Bright called 911 to report the incident. When being interviewed by police, Bright described the perpetrator as a tall, thin build, Caucasian male, wearing a “hooded ... ski mask type thing,” a blue paisley bandanna, gloves, a long-sleeved shirt, jeans, and tennis shoes.
In addition, Linda Eddy, a patron who escaped the bar when the perpetrator entered, observed defendant’s old grey/pale blue Toyota in the parking lot. She memorized the car’s license plate number, FEU375, and provided it to the police when they arrived.

Zaddie’s Tavern

Dawn Canman was working at Zaddie’s Tavern on July 24, 2010, when a very tall, thin, Caucasian male approached her with a gun. The man, who was dressed in dark, baggy jeans, a cap with a hoodie, and a blue and white bandanna that went up to his eyes, pointed his gun at Canman and demanded that she open the cash register. Canman was able to escape and call 911 when the man was distracted. According to Steven Lindhorst, a customer at the bar, the perpetrator then grabbed some cash out of the drawers[1] and left in an old black Toyota. Canman, who was outside the bar, observed the perpetrator enter a Toyota Corolla bearing license plate number FEU375.
Lindhorst’s description of the perpetrator was consistent with the description given by Canman. Lindhorst described the man as thin, wearing dark clothing, a hoodie, cap, and a dark blue “hanky” that left only his eyes exposed. Lindhorst opined that the man was approximately 6T" to 6'2" tall, and had large hands.[2]
| Matador Lounge
On July 27, 2010, at approximately 10:50 p.m., Lana Arnoult was working as a bartender at the Matador Lounge when a man with a gun walked in, announced in a low voice that this was a robbery, and jumped over the bar. Arnoult ran out of the bar and called the police. According to customers in the bar, the perpetrator then grabbed money bags from underneath the register, took the cash register, and fled the bar. Randy Thibodeaux and another customer ran after the robber, who dropped the cash register, turned around toward the men, pointed his small black handgun at them, and stated “don’t make me shoot.” The men stopped their pursuit and waited for police to arrive.
The description of the perpetrator given by Arnoult and the customers at the Matador Lounge was, for the most part, consistent. Arnoult described him as a tall, thin, white male, who wore a hooded black sweatshirt, glasses, a hat, and a multicolored bandanna that covered his face. Erby Aucoin, a customer, described the robber as approximately 6'3" tall, slim to medium build white man, who was wearing a blue and white bandanna and glasses. Jimmy Barbarito, another patron, stated that the perpetrator was wearing carpenter blue jeans with a slit on the left leg of the jeans and a blue and white bandanna that covered his face. He further described the robber as approximately 6'2" to 6'3" tall and thin. Lastly, Randy Thibo- *59 deaux described the assailant as approximately 6'3" to 6'4" tall, wearing a black hoodie, bandanna, and blue jeans.
Police officers arrived at the scene of the robbery, and a search of the area was conducted. Deputy John Heck and his K-9 dog located defendant in a shed in a homeowner’s backyard. After a brief struggle with the K-9 dog, defendant surrendered. Deputy Lee Hardy arrived in the backyard, placed defendant under arrest, and read him his Miranda rights. While walking out of the backyard, | Bdefendant spontaneously stated, “I’m sorry, I didn’t mean to do this, I have a drug problem, I’m trying to kick it, I didn’t think it would get to this point.” Subsequently, Deputy Hardy conducted a search incident to arrest- and discovered over a thousand dollars in cash in defendant’s pocket. Also recovered from defendant’s person were sunglasses, a hat, and a blue and white bandanna.
Detective Kevin Balser, the lead investigator in the armed robberies of the Turtle Bar and Zaddie’s Tavern, arrived on the scene of the Matador robbery and interviewed witnesses, whose description of the perpetrator matched the descriptions of the suspect in the Zaddie’s Tavern and Turtle Bar robberies. Detective Balser also learned that the suspect vehicle used in the two previous robberies had been located nearby. In particular, Deputy Robert Mitchell located the stolen blue four-door Toyota Corolla, bearing license plate number FEU375, near the intersection of West Metairie and Airline Park at 10:42 p.m.[3] Deputy Mitchell noted that the car had been abandoned, but that the engine was still warm.
After obtaining this information, Detective Balser took custody of defendant from the patrol division, read him his Miranda rights, and then placed him in his police car. Defendant was apologetic for what he did and admitted to committing the Matador robbery, explaining that he had an extremely addictive heroin problem. Defendant then pointed Detective Balser in the general direction of where he had dropped his handgun. When the handgun was recovered[4], defendant positively identified it as the handgun used in the Matador Lounge robbery, as well as the other two robberies.
17Petective Balser transported defendant to University Hospital for treatment of injuries received in his struggle with the K-9 dog. While at the hospital, defendant initiated another conversation with the officer. Once again, defendant was apologetic for what he had done and admitted that the Toyota Corolla was the vehicle used in all three robberies. He admitted that he used the vehicle that night, but on the way to the Matador Lounge, the vehicle broke down, and he abandoned it. Sergeant Dax Russo was also present at the scene of defendant’s apprehension and at University Hospital. He likewise heard defendant apologize for what he had done and admit that he had a drug problem. Further, he heard defendant make incul-patory statements about all three incidents.
Detective Balser subsequently obtained a search warrant for defendant’s apart *60 ment. Pursuant to the search, he located a right-hand brown leather glove that matched the left-hand glove found in the stolen Toyota. As part of the police investigation, fingerprints were obtained from inside the Toyota. It was subsequently determined that the fingerprints recovered from inside the vehicle matched defendant’s fingerprints.
Defendant testified in his own behalf at trial. Defendant denied robbing the three bars and also denied stealing the Toyota Corolla. However, defendant testified that one night he was given a ride in the Corolla by a man named Brian Yurel. While driving in the car with Yurel, the car stalled; Yurel jumped out, retrieved something from the trunk, and then left. Defendant got out of the car and started walking toward Yurel’s house when he observed the police arrive at the Matador Lounge. Defendant then went over to a gas station near the Matador Lounge where a crowd had formed and heard that two kids with guns robbed the bar. Defendant resumed walking back to Yurel’s house when he encountered Yurel hiding near the side of a house. Defendant testified that Yurel admitted to | ¿robbing the bar.[5] Defendant further testified that he is afraid of the police, so he hid in the shed in the backyard of one of the houses. Defendant denied confessing to the crimes or possessing the firearm used to commit the crimes. . He also denied possessing a blue and white bandanna.

SUFFICIÉNCY OF THE EVIDENCE

In his counseled appellate brief and in his pro se brief, defendant challenges the sufficiency of the evidence used to convict him. With regard to the armed robbery and the convicted felon in possession of a firearm charges, defendant contends that the State failed to prove his identification as the perpetrator. He points out that the assailant could not be identified by any of the witnesses, that the descriptions of the perpetrator were inconsistent, that Brian Yurel was the person who robbed all three bars, and that he was not found in possession of the gun when it was recovered. Further, with regard to possession of stolen property, defendant contends that the State failed to prove the value of the stolen vehicle. For the reasons that follow, we find no merit to these arguments.
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Mickel, 09-953 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885. Under the Jackson standard, a review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence |9at the trial established guilt beyond a reasonable doubt. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Jones, 08-20 (La. App. 5 Cir. 4/15/08), 985 So.2d 234, 240.
*61 In the instant case, with regard to the armed robbery convictions and the possession of a firearm by a convicted felon conviction, defendant claims that the State failed to prove his identification as the perpetrator of these offenses. When the key issue is the defendant’s identity as the perpetrator, the State is required to negate any reasonable probability of mis-identification. State v. Long, 408 So.2d 1221, 1227 (La.1982); State v. Searls, 04-790 (La.App. 5 Cir. 1/25/05), 895 So.2d 40, 43.
In the present case, the witnesses were unable to identify the perpetrator of the armed robberies because his face and head were covered. Nonetheless, we find that the State presented other sufficient evidence to prove beyond a reasonable doubt that defendant was the person who committed these crimes.
The witnesses from all three bars provided consistent descriptions of the armed robber. They described the perpetrator as a very tall white male, slim build, between 165 to 180 pounds, wearing a hoodie, jeans, a hat, and a blue and white bandanna that covered his face. Additionally, in both the Turtle Bar and Zaddie’s Tavern robberies, the witnesses provided a consistent description of the vehicle the perpetrator used to flee the scene, including the license plate number, and the make and model of the vehicle. The detectives later learned that the vehicle used by the perpetrator belonged to Glen Oberry and had been reported stolen four days prior to the Turtle Bar robbery. A neighbor’s home •video monitoring system caught the theft on tape. The video recording depicted the perpetrator as a thin Caucasian Imman wearing a hoodie. In court, Oberry identified the man depicted in the video as defendant.
Moreover, after the Matador Lounge was robbed, the perpetrator was chased from the bar and was observed jumping over fences and running through neighbors’ backyards. Defendant was found hiding in a shed in close proximity to the Matador Lounge and was apprehended. Defendant then confessed to committing the three armed robberies and directed the police to the location of the handgun used. The handgun was recovered next to the shed where defendant was hiding, along with two rolls of quarters. Defendant also explained that he used Cherry’s stolen vehicle in the first two robberies, but abandoned the vehicle while in route to the Matador Lounge because it broke down.
The stolen vehicle was recovered on the day of the Matador Lounge robbery. Defendant’s fingerprints matched the prints recovered from inside the Toyota. Also, a glove found inside the vehicle matched the glove found at defendant’s apartment. In addition, a search of defendant’s person was conducted at the time of his arrest. Pursuant to the search, the police recovered sunglasses, a hat, and a blue and white bandanna, all of which were accessories used by the perpetrator during the commission of the crimes.
In his sufficiency argument, defendant points out that there were inconsistencies in the descriptions of the perpetrator, and in particular, points to Deputy Simmons’ police report indicating the perpetrator was 20-25 years old, 5'5" to 5'9" tall, and between 135 and 155 pounds. Defendant also claims that Detective Balser lied about his confessions. The jury was presented with any inconsistencies in the descriptions and also heard defendant’s claims that he did not confess. After considering the evidence, the jury obviously rejected defendant’s theory of misidentification and his claim that Detective Balser lied l^about his confessions. The credibility of witnesses presenting *62 conflicting testimony on factual matters is within the sound discretion of the trier of fact. The trier of fact shall evaluate the witnesses’ credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. It is not the 'function of the appellate court to second guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law. State v. Jones, 985 So.2d at 240.
Accordingly, in view of defendant’s close proximity in time and space to the Matador Lounge at the time of his arrest, his matching description to the perpetrator provided by the witnesses, his flight and attempt at avoiding detection by hiding in a neighbor’s shed, his fingerprints and glove found inside the stolen vehicle used in the commission of the first two robberies, his possession of excess currency and accessories that matched those worn by the perpetrator, and his confession to committing the armed robberies with the firearm, we find that the State met its burden of proving defendant’s identity as the perpetrator.
With regard to his conviction for possession of a firearm by a convicted felon, defendant also claims that he could not have been found guilty of this offense because the handgun was not found in his possession and was recovered outside the perimeter of where he was apprehended. Actual possession of a firearm is not necessary to prove the possession element of LSA-R.S. 14:95.1. Constructive possession is sufficient to satisfy the element of possession. State v. Jones, 09-688 (La.App. 5 Cir. 2/9/10), 33 So.3d 306, 314. A person is in constructive possession of a firearm if the firearm is subject to his dominion and control. A person’s dominion over a weapon constitutes constructive possession even if it is only temporary in nature and even if control is shared. State v. Lee, 02 704 (La.App. 5 Cir. 12/30/02), 836 So.2d 589, 593, writ denied, 03-535 (La.10/17/03), 855 So.2d 755.
A defendant’s mere presence in an area where a firearm was found does not necessarily establish possession. The State must prove that the offender was aware that a firearm was in his presence and that the offender had the general intent to possess the weapon. Guilty knowledge may be inferred from the circumstances and proved by direct or circumstantial evidence. State v. Jones, 33 So.3d at 314.
In the present case, defendant clearly did not have physical possession of the gun at the time he was apprehended. However, the State produced sufficient evidence to prove that defendant had constructive possession of the weapon. At trial, Detective Balser testified that defendant pointed out the general direction of where he had dropped the handgun. The gun was thereafter recovered on the side of the shed where defendant had been apprehended. Once recovered and shown to defendant, he positively identified it as the gun used in the Matador robbery, as well as the two other robberies. Moreover, the gun was shown to several witnesses at trial who identified it as the gun used in the robberies. Viewing the evidence presented at trial in the light most favorable to the prosecution, we find that the State proved the possession element of this offense beyond a reasonable doubt.
We now turn our attention to the sufficiency of the evidence relating to the possession of stolen property valued over $500.00. In particular, defendant, in his pro se brief, contends that the State failed to prove the value of the stolen property.
*63 In order to convict a defendant of illegal possession of stolen things valued at over $500.00, the State must prove beyond a reasonable doubt that the defendant: (1) intentionally possessed, procured, received, or concealed, (2) anything of value, (3) that was the subject of any robbery or theft, (4) where circumstances indicate that the defendant knew or had good reason to believe that 1 iathe thing was the subject of one of these offenses, and that (5) the value of the stolen item exceeds $500.00. LSA-R.S. 14:69; State v. Harbor, 00-1258 (La.App. 5 Cir. 11/28/00), 775 So.2d 1082, 1084, appeal after remand, 01-1261 (La.App. 5 Cir. 4/10/02), 817 So.2d 223, writ denied, 02-1489 (La.5/9/03), 843 So.2d 388. Here, defendant only challenges the value element.
In this case, the State introduced seven photographs depicting the vehicle’s condition at the time it was recovered on July 27, 2010. The jury was given the opportunity to observe and examine these photographs. Also, at trial, Oberry, the owner of the 1986 Toyota Corolla,[6] testified as follows regarding the condition his vehicle was in at the time it was returned to him:
The front tire, passenger’s side, which was a new tire, had a slash in it and it was totally off the rim. The, obviously the engine started, but the clutch would not engage, it was burned up and, of course, the passenger’s side rear window was broken out, remained broken out. And my mechanics decided that this was not worth repairing, they would, even if they put a new clutch in it still may have involved more problems. So it wasn’t worth putting more than a thousand dollars into it, which it would have been.
In the instant case, the jury listened to Oberry’s testimony and had the opportunity to view pictures of the vehicle and form a conclusion as to the value of the vehicle they observed. Thus, viewing this evidence in a light most favorable to the prosecution, we find that the State satisfied its burden of proving that the vehicle was valued at $500.00 or more.
In sum, we have reviewed all of defendant’s arguments regarding the sufficiency of the evidence and conclude that the State proved beyond a reasonable doubt that defendant was guilty of the offenses charged.

\uOTHEB CRIMES EVIDENCE

In his pro se appellate brief, defendant argues that the State failed to comply with the requirements necessary to admit other crimes evidence. Defendant merely cites LSA-C.E. art. 404(B)(1), but he fails to set forth any arguments or specifics as to this issue.
According to Rule 2-12.4 of the Uniform Rules, Courts of Appeal, all specifications or assignments of error must be briefed, and the appellate court may consider as abandoned any specification or assignment of error that has not been briefed. See State v. Tranchant, 10-459 (La.App. 5 Cir. 11/23/10), 54 So.3d 730, 735, writ denied, 10-2821 (La.4/29/11), 62 So.3d 108. Restating an assigned error in brief without argument or citation of authority does not constitute briefing. State v. Lauff, 06-717 (La.App. 5 Cir. 2/13/07), 953 So.2d 813, 819. In State v. Fernandez, 03-987 (La.App. 5 Cir. 12/30/03), 864 So.2d 764, 770, this Court found that the defendant failed to brief his position where he merely asserted his position, but failed to include argument or any legal citation in support thereof. The Fernandez court found that *64 the assertions presented nothing for review on appeal. Likewise, in the instant case, defendant has failed to brief his position regarding other crimes evidence. Therefore, he has presented nothing for review on appeal. This issue is considered abandoned.

VOIR DIRE

Defendant next argues in his pro se brief that the trial court erred by not replacing the jury pool after a juror made a prejudicial comment during voir dire. Specifically, defendant complains that one particular juror was asked whether anyone she knew had been the victim of the crime, to which she replied “yes.” Then, when the same juror was asked whether this information would have any 1^influence in her reaching a decision in this case, she responded “I have already made a decision in this case.” Defendant contends that the juror’s comment implied a “preconceived notion of guilt,” and “opened the gateway” for the entire jury to base an opinion.
Defendant fails to include any legal citation in support of his argument that a new jury pool should have been empaneled based on one juror’s answer provided in response to a widely accepted question asked during voir dire. Moreover, while defendant sets forth the general facts of the potential juror’s questioning, he fails to set forth any arguments in support of his general allegation of prejudice. Accordingly, we find that defendant has presented nothing for review on appeal with regard to this alleged error. See State v. Fernandez, supra.

MOTION FOR MISTRIAL

In his pro se brief, defendant argues that the trial judge erred by not declaring a mistrial after it was discovered that one of the jurors, Dr. Sanne, was acquainted with Brian Yurel, a possible witness who defense claimed was responsible for the robberies. Defendant complains that the juror’s acquaintance with Yurel was communicated to the bailiff and overheard by his fellow jurors, leading to the dismissal of the juror. Defendant claims that he was prejudiced by this exchange, and a mistrial was warranted because “the jury was aware of a major ordeal going on and by the juror being dismissed led the jury to believe that I was the bad guy.”
In the present case, after the first three witnesses testified, it was brought to the judge’s attention by his bailiff that one of the jurors, Dr. Sanne, knew Brian Yurel, a name mentioned in the defense’s opening statement. At a bench conference, Dr. Sanne described Yurel and testified that he knew Yurel’s family and grew up in the same neighborhood as Yurel’s nephew. The trial court asked |1fiDr. Sanne whether his acquaintance with Yurel would prevent him from being fair and impartial in considering the evidence presented at trial. Dr. Sanne indicated that it should not, but when asked by the State about Yurel’s character, Dr. Sanne testified that Yurel is heavily into drugs and has a “checkered past.” Outside the hearing of this juror, the State moved to remove Dr. Sanne, arguing that it was prejudiced by the juror knowing the character of this person and telling that information to the rest of the jurors. Even though defense counsel informed the court that he was no longer going to call Yurel as a witness, the trial court granted the State’s request to remove Dr. Sanne and replace him with one of the alternate jurors. The defense noted its objection based on the juror’s indication that he could be fair and impartial despite his acquaintance with Yurel and his family.
Dr. Sanne was then brought back to the bench and questioned to determine whether he mentioned his acquaintance with Yu- *65 rel to the other jurors. Dr. Sanne stated that he did not think he did, but that the other jurors may have overheard him talking to the bailiff. Based on this information, the trial court decided to speak to each juror individually to determine what they may have overheard. Four of the jurors were questioned and each stated that the only thing they overheard was that Dr. Sanne knew one of the witnesses. The State then told the trial court that it did not believe any more jurors needed to be questioned, and asked for a recess to determine whether it would move for a mistrial. The State asked the defense whether it would join in on its motion for a mistrial if it decided to make one, to which the defense replied:
DEFENSE: I don’t see grounds for a mistrial.
THE STATE: So your answer is no?
DEFENSE: The answer is no.
_[jjAfter a recess was held, the State confirmed that it would not be moving for a mistrial. Defendant now contends that the trial court erred in not declaring a mistrial because the jury was tainted by the information concerning Dr. Sanne’s acquaintance with Yurel.
Defendant did not move for a mistrial based on these grounds at trial. In fact, defense counsel very clearly stated on the record that he did not see any grounds for a mistrial. The failure of the defense to move for a mistrial is a waiver of the error. See LSA-C.Cr.P. arts. 770, Official Revision Comment (b); State v. Sterling, 95-673 (La.App. 5 Cir. 2/27/96), 670 So.2d 1316, 1324; and State v. Sartain, 08-266 (La.App. 4 Cir. 12/30/08), 2 So.3d 1132, 1139, writ denied, 09-167 (La.10/30/09), 21 So.3d 274. Accordingly, defendant is pro-eedurally barred from raising this issue on appeal.

INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also makes allegations of ineffective assistance of counsel in his pro se brief. Defendant argues that his trial counsel was ineffective in failing to incorporate into his defense the fact that the police investigated other suspects in connection with the subject robberies. In particular, defendant contends that a man named Randell Krovane was investigated as a possible suspect and that the investigation into Krovane should have been incorporated into his defense. Given the circumstantial nature of this case, defendant asserts that this information may have changed the outcome of his trial.
The Louisiana Supreme Court has held that generally a claim of ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief, rather than direct appeal, to afford the parties an opportunity to make an adequate record for review. State v. Truitt, 500 So.2d 355 (La.1987). However, if the appeal record contains sufficient evidence to decide the issue, and 118the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Fairley, 02-168 (La.App. 5 Cir. 6/26/02), 822 So.2d 812, 816.
In this case, the record is insufficient to address defendant’s claims of ineffective assistance of counsel. Thus, this claim should be addressed through post-conviction proceedings.

EXCULPATORY EVIDENCE

In another issue raised by defendant in his pro se brief, he claims that the State withheld potentially exculpatory documentation from him until his second day of trial. He specifically complains about the State’s failure to turn over before trial a copy of the 911 tape/transcript which *66 contained information regarding a suspicious person near an abandoned Toyota Corolla, at approximately 10:39-10:44 p.m. on the night of the Matador Lounge robbery. Defendant asserts that this information was exculpatory insofar as it proved that the person seen near the Toyota Corolla could not have been the individual who robbed the Matador Lounge since the distance between the vehicle and the lounge is ten blocks, not giving the perpetrator enough time to reach the lounge at 10:55 p.m., the time of the robbery. We find no merit to this argument.
In Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-1197, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that the suppression by the State of evidence favorable to the accused after it receives a request for it violates a defendant’s due process rights where the evidence is material to either guilt or punishment, without regard to the good or bad faith of the prosecutors. Favorable evidence includes both exculpatory evidence and evidence that impeaches the testimony of a witness whose credibility or reliability may determine guilt or 119innocence. State v. Lande, 06-24 (La.App. 5 Cir. 6/28/06), 934 So.2d 280, 295, writ denied, 06-1894 (La.4/20/07), 954 So.2d 154.
Evidence is material under Brady only if there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). A reviewing court determining materiality must ascertain “not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.” Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995); State v. Johnson, 05-180 (La.App. 5 Cir. 11/29/05), 917 So.2d 576, 579, writ denied, 06-1254 (La.12/15/06), 944 So.2d 1282.
Discovery violations are not grounds for reversal unless they have actually prejudiced the defendant. State v. Garrick, 03-137 (La.4/14/04), 870 So.2d 990, 993. Even a discovery violation involving the State’s failure to disclose exculpatory evidence does not require reversal under the due process clause “unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different result.” Strickler v. Greene, 527 U.S. 263, 281, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999); State v. Johnson, 917 So.2d at 579.
Having reviewed the record, we find that there was not a Brady violation in the instant case. First, the 911 tape/transcript does not contain exculpatory evidence. In Detective Balser’s search warrant application, he states that minutes before the Matador robbery was reported, a person called in to report a suspicious vehicle and a suspicious person walking from the vehicle. No information | ^regarding the description of the suspicious person was provided. It is unknown whether that suspicious person was defendant. Moreover, it was never established how much time elapsed between the time the caller observed the abandoned vehicle and when the incident was reported.
Second, defendant was in no way prejudiced by the late disclosure of this evidence. Defendant was given time to review this material and incorporate it into his defense at trial. On cross-examination, defense counsel questioned Deputy Mitchell and Detective Balser regarding the *67 time the abandoned vehicle was reported. He also inquired as to the distance of the vehicle from its location to the Matador Lounge, arguing that less than fourteen minutes had elapsed between the time the vehicle was reported and the Matador Lounge was robbed.
Accordingly, since the evidence at issue was not exculpatory and defendant was not prejudiced by its late disclosure, we find no merit to this pro se argument.

PROSECUTORIAL MISCONDUCT

In another issue raised in his pro se brief, defendant alleges prosecutorial misconduct based upon the assertion that the State knowingly offered the false testimony of Glen Oberry. He contends that Oberry identified defendant for the first time at trial as the individual whom he observed in a home surveillance "video stealing his car, when Oberry did not provide such identification prior to trial. Defendant asserts that Oberry’s false identification led to his conviction.
The record discloses no contemporaneous objection to claims of prosecutorial misconduct. The contemporaneous objection rule, contained in LSA-C.Cr.P. art. 841(A), is specifically designed to promote judicial efficiency by preventing a defendant from gambling for a favorable verdict and then, upon conviction, resorting to appeal on errors which either could have been avoided or corrected at the time or should have put an immediate halt to the proceedings. State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364, 368, cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996). An irregularity or error cannot be availed of after verdict unless it was objected to at the time of its occurrence. This contemporaneous objection rule applies to claims of prosecutorial misconduct. See State v. Carter, 10-973 (La.App. 5 Cir. 8/30/11), 75 So.3d 1, 6, writ denied, 11-2060 (La.2/10/12), 80 So.3d 469. Accordingly, defendant has waived any error based on these allegations by his failure to enter a contemporaneous objection.
Furthermore, the allegations are not supported by the record. Oberry’s identification of defendant did not differ from his prior statement made to the police. Oberry testified that a neighbor’s surveillance camera caught the theft of his vehicle on tape. The video captured the assailant’s physical features, but Oberry told the police that he did not know the person depicted on the video. Oberry was not presented with a photographic lineup. At trial, Oberry identified defendant from the “distinct characteristics of his face,” as the person depicted in the video. Thus, even assuming the charge of prosecutorial misconduct was before the court, the record does not support defendant’s allegation that Oberry’s testimony was fraudulent. Accordingly, this assigned error is without merit.

ERROR PATENT REVIEW

We have also reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975).
As to count five, the commitment is inconsistent with the transcript regarding the crime for which defendant was convicted. The commitment indicates that defendant was found guilty of “receiving stolen things $100 +.” However, the transcript reflects that defendant was found guilty of possession of stolen things valued at over $500.00. To insure an accurate record, we remand the matter to the trial court for correction of the commitment/minute entry to properly ^reflect that defendant was found guilty of possession of stolen things valued at over *68 $500.00. See State v. Bell, 03-217 (La.App. 5 Cir. 5/28/08), 848 So.2d 87.
For the reasons set forth herein, we affirm defendant’s convictions and sentences, but remand the matter for correction of the minute entry on count five.

CONVICTIONS AND SENTENCES AFFIRMED; MATTER REMANDED

. Approximately $200.00 was stolen.

. With regard to this incident, the bar’s video surveillance system caught this robbery on tape.

. At trial, Glen Oberry testified that on July 14, 2012, his 1986 Toyota Corolla, bearing license plate number FEU375, was stolen from the street in front of his house. A neighbor’s home video monitoring system caught the theft on tape, which showed the perpetrator was a thin Caucasian man wearing a hoodie. Oberry identified defendant as the man depicted in the video.

. Deputy Lambert recovered the gun, as well as two rolls of quarters, on the side of the shed where defendant had been apprehended.

. The State and defendant stipulated that Yu-rel is approximately 5’9" and weighs 140 pounds.

. At some places in the record, the model year of the Toyota Corolla is noted as 1984; however, Glenn Oberry, the owner of the ve-hide referred to it as a 1986 Toyota Corolla in his trial testimony.